Robert Lee WHITE, Petitioner-Appellee,

v.

Dewey SOWDERS, Superintendent, Kentucky State Reformatory; and Robert F. Stephens, Attorney General of Kentucky, Respondents-Appellants.

No. 79–3242.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 18, 1979.

Decided July 1, 1980.

Robert W. Hensley, Asst. Atty. Gen., Frankfort, Ky., for respondents-appellants.

Randall L. Wheeler, Frankfort, Ky. (court-appointed), for petitioner-appellee.

Before WEICK, CELEBREZZE and ENGEL, Circuit Judges.

ENGEL, Circuit Judge.

Kentucky appeals the district court's grant of habeas corpus relief to petitioner Robert Lee White. We affirm in part, reverse in part and remand for further proceedings.

White was 17 years old when he and three others were arrested in connection with a January 22, 1975 robbery of a Fleming County, Kentucky general store and four of its patrons. Kentucky Revised Statutes (K.R.S.) § 208.170(1) provides that where there is reason to believe that a minor child of the age of 16 years or older has committed a felony, the juvenile court may, in its discretion, transfer the case to the circuit court of the county in which the offense was committed but only "[if] the court is of the opinion that the best interests of the child and of the public require that the child be tried and disposed of under the regular law governing crimes, . . . ."

Kentucky courts have invalidated transfer orders which contain no finding that the best interests of the child and of the public require that the child be tried and disposed of under the regular law governing crimes. *See Hubbs v. Commonwealth*, 511 S.W.2d 664 (Ky.1974); *Whitaker v. Commonwealth*, 479 S.W.2d 592, 594–95 (Ky.1972). White was represented by appointed counsel in the Fleming County Juvenile Court. A judge of that court waived jurisdiction over White, apparently after a hearing. The court's order stated:

This matter having come on to be heard this 25th day of January, 1972, and the infant, Robert Lee White, being represented by counsel appointed by the Fleming County Juvenile Court, to wit:— William T. Walton of Flemingsburg, Kentucky, and the Court having heard the testimony of Bill Owens, Sheriff of Fleming County, Kentucky, and the Court being sufficiently advised, it is ordered that this matter be referred to the Fleming County Grand Jury and that Robert Lee White, born October 30, 1954, of 10 Tenny Avenue, Mt. Sterling, Kentucky, be tried as an adult.

In *Kent v. United States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the Supreme Court held that the failure by the Juvenile Court of the District of Columbia to make the specific findings required by statute for waiver of jurisdiction violated the minor's rights to procedural due process. In this respect, *Kent* is no different from the holding of the Kentucky Court of Appeals in *Whitaker v. Commonwealth, supra*, or from our own court's construction of Kentucky law in *Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978). Upon the strength of this clear authority, the district court granted petitioner's writ.[1]

1. The defect in the juvenile court transfer order was well established at the time of petitioner's waiver to the Fleming County, Kentucky Circuit Court. Prior to his first RCr. 11.42 motion the Supreme Court had decided *Kent v. United* *States*, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966) and *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967). Further, the Kentucky Supreme Court (then Court of Appeals) had issued opinions adopting the requirements

In its appeal, Kentucky does not dispute that the transfer order violated both Kentucky and federal law. Instead, it urges that the federal courts are precluded from reaching that issue by the procedural posture of the case, because White failed to make a timely objection which effectively raised the issue.

 Kentucky does not provide for direct appeal from a guilty plea.[2] However, defects in the plea and prior proceedings are not waived by the plea and are subject to collateral attack under Kentucky Rule of Criminal Procedure 11.42 (RCr. 11.42), which provides:

**Rule 11.42 Motion to vacate, set aside or correct sentence.—**

(1) A prisoner in custody under sentence who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court which imposed the sentence to vacate, set aside or correct it.

(2) The motion shall be signed and verified by the movant and shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds. Failure to comply with this section shall warrant a summary dismissal of the motion.

(3) The motion shall state all grounds for holding the sentence invalid of which the movant has knowledge. Final disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding.

\* \* \* \* \* \*

(5) Affirmative allegations contained in the answer shall be treated as controverted or avoided of record. If the answer raises a material issue of fact that cannot be determined on the face of the record the court shall grant a prompt hearing and, if the movant is without counsel of record and is financially unable to employ counsel, shall appoint counsel to represent him in the proceeding, including appeal.

(6) At the conclusion of the hearing or hearings the court shall make findings determinative of the material issues of fact and enter a final order accordingly. If it appears that the movant is entitled to relief, the court shall vacate the judgment and discharge, resentence, or grant him a new trial, or correct the sentence as may be appropriate.

The record before us shows that White subsequently filed three *pro se* motions and one counseled motion for collateral relief under RCr. 11.42. While his first motion did not attack the validity of the transfer proceedings, the record shows that the issue

---

of *Kent* and specified the necessary contents of a waiver order and the proceedings required to determine the appropriateness of waiving jurisdiction. *See Hubbs v. Commonwealth*, 511 S.W.2d 664 (Ky.1974); *Risner v. Commonwealth*, 508 S.W.2d 775 (Ky.1974); *Hopson v. Commonwealth*, 500 S.W.2d 793 (Ky.1973); *Whitaker v. Commonwealth*, 479 S.W.2d 592 (Ky.1972).

A similarly defective juvenile transfer order was challenged in *Canary v. Bland*, 583 F.2d 887 (6th Cir. 1978), where the habeas petitioner collaterally attacked a Kentucky habitual criminal conviction based, in part, upon a prior guilty plea following transfer of his case from the juvenile court. Relief was sought on the basis that the juvenile court transfer order failed to comply with statutory requirements and violated due process in waiving jurisdiction by transferring his case to the juvenile court. The order failed to set forth reasons for the juvenile court's waiver of jurisdiction and made

no finding "that the best interests of the child and of the public require that the child be tried and disposed of under the regular law governing crimes . . . ." The *Canary* court stated that "the deficiencies in the transfer proceedings were manifest from the face of the juvenile court order," *id.* at 891, and agreed that it failed to satisfy basic requirements of due process or to conform with statutory requirements.

2. Under Kentucky law a guilty plea has the effect of waiving all defenses other than that the indictment charges no offense. *See, e. g., Davis v. Commonwealth*, 471 S.W.2d 740 (Ky. 1971); *Harris v. Commonwealth*, 456 S.W.2d 690 (Ky.1970). Therefore, petitioner was foreclosed from taking a direct appeal from his plea of guilty, although collateral attack remained open under Kentucky Rule of Criminal Procedure (RCr.) 11.42.

was raised, *sua sponte*, by the presiding judge of the Fleming Circuit Court.[3] Counsel was then appointed by the court to investigate the propriety of the juvenile court proceedings, but in apparent ignorance of existing Kentucky statutory and case law, reported to the judge that the waiver proceedings were proper and that the order complied with Kentucky law. The court held an evidentiary hearing on the other issues raised and denied relief. White did not appeal from that order of denial. White did appeal, however, from the denial of his third RCr. 11.42 motion. In an abbreviated opinion filed August 19, 1977, the Kentucky Court of Appeals summarily affirmed the lower court's denial of relief, observing:

> In addition to indicating that this is the third motion on the same subject, thus making the case of *Crick v. Commonwealth*, Ky., [550] S.W.2d [534], 24 K.L.S. 5 (1977) wholly applicable, the record further indicates that after the appellant filed his first motion to vacate pursuant to RCr 11.42, the court, *sua sponte*, injected the question of the juvenile proceeding. The record clearly indicates that an attorney was appointed for the appellant and that "the attorney for defendant has investigated the question of juvenile proceeding and finds it was properly done . . . ." The order of the lower court further indicates that the "contention of improper juvenile proceeding is overrule (sic) in accordance with defendant's motion." The lower court record then indicates that a complete hearing was held on the RCr 11.42 motion to vacate judgment for failure to comply with the juvenile statute and that the motion was denied after this full hearing. The appellant

now asks us to reverse this case and remand it for another full hearing.

> After wasting our time on the appellant's brief and the record herein, we would concur with the opinion of Justice Stephenson in the case of *Burch v. Commonwealth*, Ky., [555] S.W.2d [954], 24 K.L.S. 9 (1977) when he speaks of the Office of the Public Defender and says, "We discern . . . a complete lack of comprehension of the role an appellate court plays in an orderly judicial system."

■ Although petitioner pled guilty in the state court following his transfer from juvenile court, Kentucky permits a defendant in this situation to contest the legality of the transfer proceedings. Therefore, the rule of *Tollett v. Henderson*, 411 U.S. 258, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973), that a guilty plea constitutes a "break in the chain of events," and that defendant therefore may not raise independent claims related to the deprivation of constitutional rights occurring before entry of the guilty plea does not apply here. As noted in *Lefkowitz v. Newsome*, 420 U.S. 283, 293, 95 S.Ct. 886, 891, 43 L.Ed.2d 196 (1975), when state law permits a defendant to plead guilty without forfeiting his right to judicial review of specified constitutional issues, the defendant is not foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding. *See Canary v. Bland*, 583 F.2d 887, 889–90 (6th Cir. 1978). *See also Hamilton v. Commonwealth*, 534 S.W.2d 802 (Ky.1976). We therefore proceed to the question whether White's alleged noncompliance with RCr. 11.42 constitutes state procedural default and foreclosed his right to challenge the constitutional validity of the transfer order. We conclude that habeas corpus relief remained available to petitioner.

**3.** White filed two additional *pro se* RCr. 11.42 motions following the initial denial. The second motion was identical to the first, raising only the issues of involuntariness of the guilty plea and ineffective assistance of counsel. Petitioner's third motion added a new ground, the issue of whether he was properly transferred from juvenile to circuit court jurisdiction. Finally, petitioner's fourth petition was filed with assistance of counsel, and included all previous issues. The fourth motion was denied without an evidentiary hearing because the court determined that petitioner had raised or should have raised in the three prior RCr. 11.42 motions his allegations concerning the involuntary nature of the guilty plea and ineffective assistance of counsel. The court denied relief on the waiver issue because it thought that the allegations as to improper transfer from juvenile court should have been raised on appeal and not under RCr. 11.42.

## I.

We note at the outset that White, a minor, never personally waived anything. Nevertheless, Kentucky claims that White is barred from challenging the juvenile transfer order because he was obligated to raise this issue in his first RCr. 11.42 motion. As noted earlier, the rule provides that the motion shall state "[a]ll grounds for holding the sentence invalid of which the movant has knowledge" and further commands that "[f]inal disposition of the motion shall conclude all issues that could reasonably have been presented in the same proceeding." RCr. 11.42(3). Although it is true that White's first RCr. 11.42 motion did not specifically challenge the validity of his transfer order, it is equally true that the issue was injected into those proceedings by the circuit judge himself, who also appointed counsel and made an express determination in his final order holding that there was no merit in this contention.

Our analysis begins with the observation of Justice Stewart, in *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), that whether the district court could properly reach a habeas petitioner's claim of constitutional deprivation is not a question of power:

> There can be no question of a federal district court's power to entertain an application for writ of habeas corpus in a case such as this. 28 U.S.C. §§ 2241, 2254. The issue, as in the *Davis* case [*Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973)] goes rather to the appropriate exercise of that power.

This court has long recognized that in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forego the exercise of its habeas corpus power. See *Fay v. Noia*, 372 U.S. 391, 425–26 [83 S.Ct. 822, 9 L.Ed.2d 837] (1963). The question to be decided is whether the circumstances of this case are such as to invoke the application of those considerations and concerns.

425 U.S. at 538–39, 96 S.Ct. at 1710. We therefore conceive the question here to be whether either the "deliberate bypass" rule of *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), or the Supreme Court's "cause" and "prejudice" rule embodied in *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), precluded the district court from reaching the constitutional issues present here.[4]

The record in this case contains no evidence that White's failure to challenge the validity of the transfer order amounted to a deliberate bypass within the meaning of *Fay v. Noia, supra*, nor does Kentucky so contend. Instead, the state appears to assert that White's failure to challenge the validity of the transfer order at the first RCr. 11.42 hearing bars habeas corpus relief in the absence of showing "cause" and "prejudice" within the meaning of *Wainwright v. Sykes, supra*.

Whether the "cause" and "prejudice" standard should be applied to petitioner's failure to allege the invalidity of the transfer order in his first petition is not clear

---

**4.** In *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the Court held that "the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state remedies." *Id.* at 438, 83 S.Ct. at 849. It then went on to hold that "[t]he classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461] (1968)—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard." 372 U.S. at 439, 83 S.Ct. at 849. In *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court criticized the sweeping language of *Fay v. Noia* and held that, where a Florida contemporaneous objection rule required that the "respondent's confession be challenged at trial or not at all," . . . "his failure to timely object to its admission amounted to an independent and adequate state procedural ground which would have prevented direct relief here," *id.* at 86–87, 9 S.Ct. at 2506, 2507, and that the rule of *Francis v. Henderson*, 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), barring federal habeas review absent a showing of "cause" and "prejudice" attendant to a state procedural waiver was to be applied to the admission of a confession at trial. *Id.* at 87, 97 S.Ct. at 2506.

from the language of *Wainwright v. Sykes.* It may, in the final analysis, depend upon the extent to which *Wainwright* is ultimately held to undercut the less restrictive deliberate bypass of *Fay v. Noia.*[5] It is apparent that a full majority of the Supreme Court in *Wainwright v. Sykes* intended to restrict what it considered the excessively broad language of *Fay v. Noia.* At the same time, Justice Rehnquist, speaking for the majority, appeared equally intent on crafting a relatively narrow rule.[6] In concurring, Chief Justice Burger expressed his view that *Fay v. Noia* "was never designed for, and is inapplicable to, errors—even of constitutional dimension— alleged to have been committed during trial." 433 U.S. at 92, 97 S.Ct. at 2509.[7]

Although not expressly stated in its argument, it is apparent that the state regards the restrictive requirements of RCr. 11.42 as equivalent to a contemporaneous objection rule. Thus it argues that because petitioner failed to allege the invalidity of the juvenile court transfer order in his first motion, he was precluded from later raising that objection. However, even if RCr. 11.42 is so viewed, we are satisfied that petitioner substantially complied with it. While the issue of the juvenile transfer order was not specifically incorporated into his original petition, the Kentucky courts have recognized a relaxation of RCr. 11.42 requirements in instances where the petition is filed without the aid of counsel. *Smith v. Commonwealth,* 502 S.W.2d 516 (Ky.1973).[8]

5. *See Wainwright v. Sykes,* 433 U.S. 72, 92, 97 S.Ct. 2497, 2507, 53 L.Ed.2d 594 (1977) (Burger, C. J., concurring); *Rinehart v. Brewer,* 561 F.2d 126, 130 n.6 (8th Cir. 1977); *United States ex rel. Carbone v. Manson,* 447 F.Supp. 611, 619 (D.Conn.1978).

6. *Wainwright v. Sykes,* 433 U.S. 72, 85, 97 S.Ct. 2497, 2505, 53 L.Ed.2d 594 (1977). Justice Rehnquist noted:

> We have no occasion today to consider the *Fay* rule as applied to the facts there confronting the Court. Whether the *Francis* rule should preclude federal habeas review of claims not made in accordance with state procedure where the criminal defendant has surrendered, other than for reasons of tactical advantage, the right to have all of his claims of trial error considered by a state appellate court, we leave for another day.
>
> The Court in *Fay* stated its knowing-and-deliberate-waiver rule in language which applied not only to the waiver of the right to appeal, but to failures to raise individual substantive objections in the state trial. Then, with a single sentence in a footnote, the Court swept aside all decisions of this Court "to the extent that [they] may be read to suggest a standard of discretion in federal habeas corpus proceedings different from what we lay down today. . . ." 372 U.S., at 439 n.44 [83 S.Ct. 822]. We do not choose to paint with a similarly broad brush here.

*Id.* at 88 n.12, 97 S.Ct. at 2507.

7. Chief Justice Burger's concurrence in *Wainwright, supra,* further observed:

> The touchstone of *Fay* and *Zerbst*, then, is the exercise of volition by the defendant himself with respect to his own federal constitutional rights. In contrast, the claim in the case before us relates to events during the trial itself. Typically, habeas petitioners claim that unlawfully secured evidence was admitted, but see *Stone v. Powell,* 428 U.S. 465 [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976), or that improper testimony was adduced, or that an improper jury charge was given, but see *Henderson v. Kibbe,* 431 U.S. 145, 157 [97 S.Ct. 1730, 52 L.Ed.2d 203] (1977) (BURGER, C. J., concurring in judgment), or that a particular line of examination or argument by the prosecutor was improper or prejudicial. But unlike *Fay* and *Zerbst,* preservation of this type of claim under state procedural rules does not generally involve an assertion by the defendant himself; rather, the decision to assert or not to assert constitutional rights or constitutionally based objections at trial is necessary entrusted to the defendant's attorney, who must make on-the-spot decisions at virtually all stages of a criminal trial.
>
> *Id.* at 92, 97 S.Ct. at 2509.

8. In *Smith v. Commonwealth,* 502 S.W.2d 516 (Ky.1973), the court inquired into the reasonableness of defendant's failure to raise an issue created by his counsel's mistake. Defendant was represented by court-appointed counsel who failed to file a timely appeal following defendant's conviction. Thereafter, defendant filed a *pro se* RCr. 11.42 motion to vacate judgment which was denied without an evidentiary hearing because a direct appeal had not been filed. Subsequently, defendant's direct appeal was dismissed as untimely. Faced with this dilemma, Smith filed a second *pro se* RCr. 11.42 motion asserting that his court-appointed counsel's failure to file a timely notice of appeal had resulted in the denial of his right to appeal his conviction. This motion was eventually denied on the basis that defendant had previously filed a motion to vacate which had been overruled.

■ Further, RCr. 11.42(2) provides that failure to state specifically the grounds relied on therein "shall warrant summary dismissal" of the motion, but it does not command it. The absence of mandatory language in the motion procedure and the provision for subsequent appointment of counsel persuade us that the trial judge was well within his discretion under Kentucky law in raising and disposing of the issue *sua sponte*, which reasonably seems to anticipate that RCr. 11.42 motions filed *pro se* may very well be incomplete or imperfect. While the counsel whom the judge appointed was unaware of both federal and Kentucky law, the issue was in fact raised, considered, and disposed of by the court at the hearing on petitioner's initial RCr. 11.42 motion. Thus, in all events, the policy behind the contemporaneous objection rule was satisfied. *See Wainwright v. Sykes*, 433 U.S. at 90, 97 S.Ct. at 2508 (Rehnquist, J.). The state court system in fact had an opportunity to address the constitutional issue at the earliest possible stage of the proceedings following White's plea. The "important and legitimate concerns" of sound judicial administration stressed in *Davis v. United States*, 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), and *Francis v. Henderson*, 425 U.S. 536, 541, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976), were given effect by the trial judge's alert exercise of his discretion in raising the issue *sua sponte* at the first hearing. The state does not contend that the Fleming County trial judge erred in reaching and disposing of the issue *sua sponte*.

Our determination that there was substantial compliance with RCr. 11.42 makes it unnecessary for us to decide finally whether the deliberate bypass standard of *Fay v. Noia* or the "cause" and "prejudice" standard of *Wainwright v. Sykes* should apply to the particular procedural default which Kentucky argues was present here. The existence of post-plea collateral relief itself clearly indicates that even failure to object to the invalidity of the transfer order at the time of the plea would not bar relief under RCr. 11.42. We are far from certain that *Wainwright v. Sykes*, would apply here even assuming that petitioner failed to comply with the contemporaneous objection requirement of RCr. 11.42. The default alleged here did not occur during the course of trial, as in *Wainwright v. Sykes*, and the real issue appears more likely to be one of exhaustion of state remedies.

It is clear, of course, that petitioner has exhausted his state remedies. Beyond that, however, the constitutional issue necessarily concerns the relinquishment of a substantial right of the defendant himself, as a minor accused of crime, to insist upon procedures expressly designed for his personal protection. While defense counsel's intelligence and legal skill may play an important strategic role in determining whether to oppose transfer of the case to circuit court, a strong argument can be made that the juvenile's interest may also require his informed personal judgment in the waiver decision, the "touchstone" which Chief Justice Burger found as justifying the deliberate bypass standard of *Fay*.

II.

Finally, as something akin to a second line of defense, Kentucky argues that *Ca-*

---

Smith appealed the denial of his second motion on the grounds that he had "neither knowledge of, nor reason to know of, his attorney's untimely filing of the notice of appeal, and that as a result, his second motion to vacate should not have been overruled without an evidentiary hearing." *Id.* at 516. The Kentucky Court of Appeals responded by citing the statute, with emphasis upon the word "reasonably." The court concluded on these facts that:

We find that under the circumstances of this case appellant could not reasonably have known at the time his original RCr. 11.42 motion was filed that his court-appointed counsel had filed an untimely notice of appeal.
*Id.* at 517.
On this basis it appears that Kentucky's procedural rule, when read in full, provides for exceptions to the general rule in certain circumstances. Thus if RCr. 11.42 contains a contemporaneous objection rule, within the meaning of *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), its own terms and Kentucky's judicial construction of them appear to create limitations which the federal habeas judge is equally entitled to apply in considering the state waiver issue.

*nary v. Bland,* 583 F.2d 887 (6th Cir. 1978), forecloses habeas corpus relief because petitioner did not allege ineffective assistance of counsel in his petition before the district court. The state asserts that in *Canary,* Judge Lively held under similar circumstances that the "cause" requirement of *Wainwright v. Sykes* might not be satisfied by an inadvertent failure of counsel to challenge introduction of proof of a prior conviction in an habitual criminal prosecution, and that we must conclude that "cause" is absent as a matter of law under the similar facts here. Although Judge Lively withheld any definitive judgment concerning "cause" in *Canary,* the court granted the writ on an alternative ineffective assistance of counsel argument. It is true that the conscientious efforts of the Fleming County trial judge were frustrated by the incompetence of counsel appointed to represent White at the first RCr. 11.42 hearing, but this cannot be laid at the door of petitioner any more than in *Smith v. Commonwealth,* 502 S.W.2d 516 (Ky.1973), where respondent's attorney negligently failed to timely perfect his appeal. *See* note 8, *supra.*

■ The *Canary* court's reliance on the ineffective assistance of counsel ground for its ultimate and dispositive ruling made it unnecessary for the court to determine whether the "cause" and "prejudice" rule of *Wainwright v. Sykes,* was applicable to the underlying claim that the transfer order was invalid. Apparently the state's argument results from an inaccurate reading of *Canary* since it is clear that the court there did not rule that habeas corpus relief is available to a petitioner under these circumstances only upon an assertion of ineffective assistance of counsel. It was unnecessary for White to raise the question of his counsel's incompetence as a separate constitutional issue; it is enough that the principal issue concerning the defective transfer order is properly before us.

### III.

Although it is apparent that the district court properly determined that White's rights were violated by the inadequacy of the juvenile court transfer order, petitioner is no longer a minor and is not subject to juvenile court jurisdiction. Therefore, one final question remains. The district court entered a judgment granting full habeas corpus relief and ordered petitioner released subject only "to the extent that confinement is based upon the Fleming Circuit Court conviction." We conclude that the district court should more properly have followed procedures similar to those set forth in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). In *Kent,* as here, the transfer procedures were found to have violated the juvenile's right to due process but by the time the case was decided, the minor had reached the age of majority, and the juvenile court could no longer exercise jurisdiction over him. In such circumstances, Mr. Justice Fortas observed as follows:

Ordinarily we would reverse the Court of Appeals and direct the District Court to remand the case to the Juvenile Court for a new determination of waiver. If on remand the decision were against waiver, the indictment in the District Court would be dismissed. See *Black v. United States, supra* [355 F.2d 104]. However, petitioner has now passed the age of 21 and the Juvenile Court can no longer exercise jurisdiction over him. In view of the unavailability of a redetermination of the waiver question by the Juvenile Court, it is urged by petitioner that the conviction should be vacated and the indictment dismissed. In the circumstances of this case, . . . we do not consider it appropriate to grant this drastic relief. Accordingly, we vacate the order of the Court of Appeals and the judgment of the District Court and remand the case to the District Court for a hearing *de novo* on waiver, consistent with this opinion. If that court finds that waiver was inappropriate, petitioner's conviction must be vacated. If, however, it finds that the waiver order was proper when originally made, the District Court may proceed, after consideration of such motions as counsel may make and such further proceedings, if any, as may be warranted, to enter an appropriate judgment.

*Id.* at 564–65, 86 S.Ct. at 1059 (footnotes omitted).[9]

■ As in *Kent,* referral to the Fleming County Juvenile Court here would be unavailing since that court no longer had jurisdiction. We have also considered the issuance of a writ conditioned upon the holding of a similar hearing in the Kentucky Circuit Court. This procedure has some attraction, for there is no showing that the circuit judge who was conscientious enough to appoint counsel in his first RCr. 11.42 motion would not accord him a fair hearing now that he is exposed to the issue. At the same time, since an opportunity has already been accorded the state courts to resolve the issue and since these proceedings have already been so protracted, we believe our discretion is better exercised by a remand to the district court for the purpose of holding such a hearing in that court.

Accordingly, we affirm the district court judgment insofar as it holds that the transfer order was constitutionally defective, but reverse that part of the order that grants the writ outright and remand to the district court for a hearing *de novo* on the question of waiver. The parties may introduce any record of the juvenile court proceedings or any other evidence relevant to the issues as they existed at that time. If the district court determines that waiver was inappropriate under Kentucky law, the writ should issue. If, however, the court determines that the waiver order, when originally made in a contested waiver hearing complying with due process requirements and constitutional safeguards, would have properly resulted in a transfer to the adult court, then the court may proceed to determine whether any additional proceedings are warranted prior to entering judgment consistent with this opinion.

**9.** Decisions after *Kent* have generally recognized that the proper remedy under the circumstance is to remand for a *de novo* hearing in the district court to probe the validity of the original transfer order. Although the court below determined that the order was fatally deficient, the record does not disclose whether petitioner would have been properly transferred to the adult court if the waiver proceedings had complied with the due process standards required by *Kent. See, e. g., United States ex rel. Turner v. Rundle,* 438 F.2d 839 (3rd Cir. 1971); *Brown v. Cox,* 481 F.2d 622 (4th Cir. 1973); *Geboy v. Gray,* 471 F.2d 575 (7th Cir. 1973); *Powell v. Hocker,* 453 F.2d 652, 657 n. 10 (9th Cir. 1971); *Bromley v. Crisp,* 561 F.2d 1351 (10th Cir. 1977).

Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent herewith.

Before WEICK and ENGEL, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

## ORDER

In his petition for rehearing, White asserts that we have erred in requiring a remand to the district court to determine whether the original transfer from juvenile to circuit court was "appropriate," a procedure specifically authorized in *Kent v. United States,* 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966). We disagree.

■ It is true, as White points out, that in similar cases the Supreme Court of Kentucky has reversed judgments of conviction without requiring a remand to determine the appropriateness of the transfer. *See Richardson v. Commonwealth,* 550 S.W.2d 538 (Ky.1977); *Bingham v. Commonwealth,* 550 S.W.2d 535 (Ky.1977). White's argument, however, that we must impose the same remedy that the Kentucky courts would have had they reached the merits of his case misses an essential distinction in function between state courts in direct appellate review and federal courts in habeas corpus proceedings. Our function is merely to review alleged constitutional errors and, upon finding such, to impose remedies adequate to vindicate the constitutional rights denied. A remand for a hearing on the appropriateness of White's transfer is an adequate remedy. Unlike federal courts, however, Kentucky courts, in direct appellate review, are free to impose remedies which are more extensive than the Constitution requires. This the Kentucky courts have apparently seen fit to do in *Richardson, Bingham* and other cases.

Upon reconsideration, we are not so certain as we implied in our original opinion that there is no direct appeal in Kentucky law from pleas of guilty. Kentucky law is not that clear. *See Bingham v. Commonwealth, supra.* This observation does not, however, affect the validity of our conclusion earlier reached with respect to the remand issue. Accordingly,

IT IS ORDERED that the motion for rehearing is denied.