**COMMONWEALTH of Kentucky, Appellant/Cross–Appellee**

v.

**Louis Lee ROBERTSON, Jr., Appellee/Cross–Appellant.**

**Nos. 2011–CA–002159–MR, 2011–CA–002205–MR.**

Court of Appeals of Kentucky.

April 19, 2013.

Rehearing Denied June 27, 2013.

Rehearing Denied July 29, 2013.

Discretionary Review Denied by Supreme Court June 11, 2014.

Jack Conway(argued), Attorney General of Kentucky, James Hays Lawson(argued), Assistant Attorney General, Frankfort, KY, for Appellant/Cross–Appellee.

Katherine (Kate) M.D. Holm(argued), Robert K. Strong(argued), Department of Public Advocacy, LaGrange, KY, for Appellee/Cross–Appellant.

Before MAZE, STUMBO and THOMPSON, Judges.

### OPINION

MAZE, Judge:

The Commonwealth appeals the opinion and order of the Nelson Circuit Court

overturning the conviction of Appellee, Louis Robertson, Jr. (hereafter "Robertson") following his ineffective assistance of counsel claim under Kentucky Rules of Criminal Procedure ("RCr") 11.42. On cross-appeal, Robertson appeals the trial court's denial of his motions for new juvenile transfer and sentencing hearings based on his trial counsel's ineffective assistance during both. After careful consideration of the facts in the record, we agree with the trial court that trial counsel's performance was so deficient during trial as to prejudice Robertson, requiring his conviction and sentence to be vacated. Further, while we disagree with the trial court's reasoning, we agree that Robertson cannot receive a rehearing on the issue of juvenile transfer. Hence, we affirm the trial court's order.

## Background

In August 1995, the Commonwealth charged Robertson with six counts of sodomy and five counts of sexual assault following accusations by two young children he babysat. Robertson was six weeks shy of his eighteenth birthday when he was charged and was between the ages of sixteen and seventeen during the period of time in which his crimes allegedly took place. For this reason, the case against Robertson originated in Nelson County's juvenile court and a transfer hearing was held on January 5, 1996. Robertson received legal counsel from the Department of Public Advocacy. At the transfer hearing, Robertson's counsel called no witnesses and did not challenge the testimony of a witness called by the Commonwealth who testified incorrectly regarding programs which could assist with Robertson's rehabilitation as a juvenile. The law at the time of the hearing clearly refuted this testimony. Following the hearing, the juvenile court ordered that the case be transferred to circuit court, where Robertson was tried as an adult for his crimes.

At trial, witnesses for the Commonwealth included the lead police investigator, both young victims and the victims' mother. Robertson's trial counsel called one witness, Robertson's mother. Robertson did not testify in his own defense. During closing arguments, the prosecutor stated to the jury that sex abuse cases generally come down to a child's word against an adult's, but that Robertson's case was "as good as it gets" because of the fact that there were two children and "this defendant cannot give you any reason why these children would make this up." A few moments later, the prosecutor stated that the children had "absolutely no motive" to lie about what had happened. Finally, after walking the jury through each jury instruction and matching them to the facts of the case as they had been testified to, the prosecutor stated that the testimony of the children was "un-refuted" by Robertson.

Following fourteen minutes of deliberation, the jury convicted Robertson on all counts. During the sentencing phase, Robertson's trial counsel provided the jury with no mitigating evidence or information on Robertson's chance of reoffending or possible treatment options. Trial counsel instead called one witness, Robertson's mother, who testified to his conduct while he had been incarcerated awaiting trial. The prosecutor, during his closing arguments to the jury at sentencing, requested that the jury sentence Robertson to 525 years in prison, and asked the jury three times to "send a message" to the parole board. The prosecutor also referenced a prior misdemeanor assault charge against Robertson, stating that the underlying facts of the incident showed the jury what kind of a person Robertson was. Robertson's trial counsel did not object to the

evidence or to this statement. After brief deliberations, the jury recommended a sentence of 100 years. On direct appeal to the Kentucky Supreme Court, Robertson's convictions and sentence were upheld in a 1999 opinion.

After a lengthy RCr 11.42 process, which once again took Robertson to the Supreme Court in 2005, his motion was remanded to the Nelson Circuit Court which ultimately deemed it timely in 2009 and held an evidentiary hearing on January 20, 2011. At this hearing, Robertson's former trial counsel admitted to his lack of preparedness ahead of Robertson's juvenile transfer hearing, including his failure to interview the Commonwealth's witnesses, to research relevant law and lack of familiarity with relevant juvenile rehabilitation programs. He further admitted that he relied on the judge's experience to protect his client's interest.

In addition to trial counsel, Robertson called a juvenile law expert, Tim Shull ("Shull"), who testified that certain misstatements of fact by Commonwealth witnesses, including that the state was supposedly unable to treat juvenile sex offenders, would have easily been proven wrong by competent trial counsel, as authority to the contrary came "straight from the statute." Shull also testified that it is typical for an expert witness to be called in such cases to testify to treatment options and how "much more amenable to treatment [juveniles are] than adults," while trial counsel neither called, nor consulted, any such witness at trial. Robertson called another expert, a former state Cabinet for Human Resources and Department of Juvenile Justice representative, who reiterated Shull's latter point. Finally, Robertson called Dr. Grey, who testified that it was common knowledge at the time of Robertson's trial that juvenile offenders could

be, and commonly were, treated outside of residential treatment facilities and within the community. Dr. Grey also testified that, due to the impulsive manner in which juvenile sex crimes typically occur, recidivism rates among such offenders are much lower than those observed among adults. Robertson's trial counsel provided no such testimony at trial.

On October 27, 2011, the trial court granted Robertson's motion to vacate his convictions; however, the court denied his motion for a new juvenile transfer hearing. Regarding the latter, the court reasoned that, despite trial counsel's "substantial errors," the juvenile court had appropriately considered the relevant legal factors, and that, given Robertson's current age, if he was granted a new transfer hearing, "it seems highly doubtful that [Robertson] would not be transferred immediately to circuit court." Further, the court concluded that trial counsel was prohibited, by court order, from mentioning Robertson's age at sentencing; therefore, that he did not present that fact as evidence tending to mitigate Robertson's sentence could not constitute ineffective assistance. Regarding the prosecutor's request that the jury "send a message to the parole board," the trial court deferred to the Supreme Court's finding on direct appeal that such statements were proper because the "message" was directed at the parole board and not the community.

In vacating Robertson's convictions at trial, the court found that Robertson's trial counsel had "completely abdicated his responsibility to his client at a critical proceeding" and that his repeated failures to object to prejudicial evidence and repeated prosecutorial misconduct were harmful to his client and devoid of any strategy. Further, the court concluded that such failures "raise[d] substantial questions undermin-

ing confidence in the outcome of the case" and that "there is a reasonable probability that the result would have been different had counsel objected to the prosecutorial misconduct." The Commonwealth now appeals the trial court's decision to vacate Robertson's convictions, while Robertson appeals the denial of a new juvenile transfer hearing.

## Standard of Review and the *Strickland* Standard

■■■ The circuit court's findings regarding claims of ineffective assistance of counsel are mixed questions of law and fact and are reviewed *de novo*. *Brown v. Commonwealth*, 253 S.W.3d 490, 500 (Ky.2008)(citing *Groseclose v. Bell*, 130 F.3d 1161, 1164 (6th Cir.1997)). The reviewing court may set aside the trial court's fact determinations if they are clearly erroneous. *Id.* (citing Kentucky Rules of Civil Procedure [CR] 52.01). A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Furthermore, the standard of review in RCr 11.42 proceedings, when the trial court conducts an evidentiary hearing, requires that the reviewing court must defer to the determinations of fact and witness credibility made by the trial judge. *See McQueen v. Commonwealth*, 721 S.W.2d 694 (Ky.1986); *Commonwealth v. Anderson*, 934 S.W.2d 276 (Ky.1996).

■■ "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686, 104 S.Ct. at 2064.

A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction ... has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.

*Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The standard for assessing counsel's performance is whether the alleged acts or omissions were outside the wide range of prevailing professional norms based on an objective standard of reasonableness. *Strickland,* 466 U.S. at 688–89, 104 S.Ct. at 2064–65. The defendant bears the burden of identifying specific acts or omissions alleged to constitute deficient performance. *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. Secondly, to prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

## Analysis

On appeal, the Commonwealth contends that the trial court erred in vacating Robertson's convictions pursuant to RCr 11.42, arguing that his trial counsel's various failures did not rise to the level of prejudicial ineffectiveness required in *Strickland.* On cross-appeal, Robertson argues that, in addition to vacating his convictions, the failures of his trial counsel before and after trial entitle him to a new juvenile transfer hearing. We address both appeals in turn.

### I. Ineffectiveness of Counsel at Trial

The trial court largely based its decision to vacate Robertson's convictions on his

trial counsel's failure to object to the several statements and incidences of alleged prosecutorial misconduct during the Commonwealth's closing statement at trial. During its argument, the Commonwealth first spoke generally about the usual nature of the evidence in sexual abuse cases such as the one before the jury. "[I]n all of these cases, in child sex-abuse cases, the vast majority comes down to a child's word against an adult." However, the Commonwealth continued, "[w]hy is this case better than most cases? Because we have two children. And the best reason is this defendant can't give you any reason why these children would make this up." Trial counsel did not object to this statement. A few moments later, the Commonwealth again mentioned Robertson's failure to present a reason his alleged victims could be lying, stating, "[t]he defendant didn't do that in this case. And he couldn't give any motive in the world for these kids to just make this up. That's very important!" Finally, the Commonwealth concluded for the jury that "this proves un-refuted that it occurred, and you've heard what the children have had to say."

From these statements, the trial court concluded that prosecutorial misconduct had occurred in violation of Robertson's right not to testify and that trial counsel's failure to object on his client's behalf constituted ineffective assistance of counsel. In so doing, the court found that, "[g]iven the weak nature of the prosecution's case, the failure to object raises substantial questions undermining confidence in the outcome of the case. The court concludes that there is a reasonable probability that the result would have been different had counsel objected to the prosecutorial misconduct." The Commonwealth disagrees, contending that, taken in context, the prosecutor's comments were not "manifestly intended to be ... a comment upon the defendant's failure to testify" and, there-

fore, did not constitute prosecutorial misconduct to which trial counsel could have successfully objected.

■■■ "It is elementary, of course, that the failure of a defendant to testify in a criminal prosecution cannot be commented upon or referred to before the jury." *Adams v. Commonwealth,* 264 S.W.2d 283, 286 (Ky.1954). Furthermore, a prosecutor is forbidden from making even indirect references to the silence of the accused, *Williams v. Commonwealth,* 287 Ky. 659, 154 S.W.2d 728 (1941), and "an admonition by the court to disregard the improper remarks is not considered sufficient to cure the error." *Adams,* at 286. Such comments are violative of a defendant's rights only when they are "manifestly intended to be, or was of such character that the jury would necessarily take it to be, a comment upon the defendant's failure to testify, or invited the jury to draw an adverse inference of guilt from that failure." *Ragland v. Commonwealth,* 191 S.W.3d 569, 589–90 (Ky.2006) (citing *Byrd v. Commonwealth,* 825 S.W.2d 272, 275 (Ky.1992)) (*overruled on other grounds*) (internal citations omitted).

The Commonwealth urges us to take all the comments in context, and "if there is another, equally plausible explanation for a statement, malice will not be presumed and the statement will not be construed as comment on the defendant's failure to testify." *Ragland, supra,* at 589–90. The Commonwealth contends that its prosecutor, in the case of at least one of his comments, was only speaking generally about sex abuse cases and the evidence such cases typically do and do not bring with them to trial. It asserts that he did not specifically apply those generalities to Robertson's case or otherwise make a specific comment on Robertson's failure to testify. We are not persuaded. While the

Commonwealth's statement at trial, that "in all of these cases, in child sex-abuse cases, the vast majority comes down to a child's word against an adult" was indeed general, what immediately followed was not. In asking the jury, "[w]hy is this case better than most cases?" and in concluding, "[b]ecause we have two children. And the best reason is this defendant can't give you any reason why these children would make this up[,]" the Commonwealth clearly references Robertson and his alleged victims all but by name. This statement was impermissible and incurable by the context in which it was made.

The Commonwealth's statement that the children's testimony regarding what happened, when it happened and where it happened was "un-refuted" during trial was also impermissible. The Commonwealth contends that this statement was permissible because to "refer to evidence as uncontradicted . . . does not reflect on a defendant's failure to testify if evidence other than the defendant's own testimony could have contradicted it." *Webb v. Mitchell*, 586 F.3d 383, 396 (6th Cir.2009)(citing *Joseph v. Coyle*, 469 F.3d 441, 474 (6th Cir.2006)). Again, we are not persuaded.

As the Commonwealth suggests, we examine this statement in its context. When the prosecutor made this statement, he was reviewing for the jury, very specifically, the individual incidences of alleged abuse: how they occurred, when they occurred, where in the home they occurred and which of the children was involved. The jury knew, and was told again, that only Robertson and the two children were present at the time of the alleged abuse; hence, the jury knew that only three people knew exactly what happened, that two of them testified and one of them, Robertson, did not. Therefore, only one person possessed the knowledge

to conclusively rebut the testimony of the children: Robertson. For the prosecutor to have counted the children's statements as "un-refuted" at trial was impermissible, and to suggest, as the Commonwealth does on appeal, that testimony to "refute" the children's testimony "could have easily come from witnesses other than Appellee" is axiomatically wrong.

 Even taking the Commonwealth's comments in their respective contexts, we find that each constituted at least an indirect reference to Robertson's failure to testify. Even if each, if taken in isolation, might be permitted (which we do not concede), the cumulative effect of all three was prejudicial to Robertson and violated his Fifth Amendment right. The Commonwealth's comments were not general, they were specific; and they were not benign, they were prejudicial. They thrice reminded the jury that Robertson himself had offered no testimony in response to the allegations against him. This constitutes prosecutorial misconduct and impermissible evidence, both of which, if objected to, would likely have been cause for a mistrial or, at the very least, excluded from the jury's consideration. Trial counsel's failure both to recognize the obvious impermissibility of these statements and to immediately object was so deficient as to practically render Robertson lawyer-less at that moment in the trial. Furthermore, his failure to object prejudiced his client's defense. Had trial counsel done so, a "reasonable probability" exists that his client's trial would have ended differently. Accordingly, the trial court properly found that the elements of *Strickland* were satisfied and that Robertson's convictions must be vacated.

Robertson correctly states that, as a result of our above holding, his request for a new sentencing hearing is moot and, therefore, we will not address it further.

## II. Robertson's Request for a New Juvenile Transfer Hearing

As the trial court points out, the Supreme Court of Kentucky, in its 1999 opinion, affirmed the juvenile court's transfer of the case to circuit court where Robertson was tried outside the protection of the juvenile code. The Supreme Court found that the juvenile court appropriately applied the relevant facts to the appropriate law, concluding that Robertson's age and prior convictions, as well as the seriousness of his crimes and diminished chance at reasonable rehabilitation, dictated transfer of the case. Despite misstatements of law and fact in testimony for the Commonwealth and trial counsel's failure to remedy them, the trial court in the present action agreed with the Supreme Court's 1999 holding.

 Though it ultimately ruled on the merits, the trial court stated in its order denying Robertson a new juvenile transfer hearing that it believed the Supreme Court's 1999 opinion affirming the result of that hearing also barred the court's present consideration of the issue. The Commonwealth took up this argument at oral argument when it asserted that the doctrine of the "law of the case" precluded this Court's consideration of the issue, and that the Supreme Court's prior review of the juvenile court's decision to transfer the case was final and not subject to attack under RCr 11.42. This is incorrect. In *Leonard v. Commonwealth*, 279 S.W.3d 151 (Ky.2009), our Supreme Court rejected the notion that appellate review of direct errors by a trial court precluded a collateral attack via RCr 11.42 of errors committed by trial counsel. Accordingly, Robertson's claims regarding his counsel's performance at the juvenile transfer hearing may proceed.

## *Strickland* and the Presumption of Prejudice Under *Cronic*

It is at this juncture that we are faced with a necessary question which was not considered by the trial court and which appears to be of first impression to this Court. Whereas *Strickland*'s two-pronged analysis applies to most cases of ineffective assistance of counsel, the United States Supreme Court has also determined that in certain Sixth Amendment contexts, *Strickland* does not apply and prejudice must be presumed. *See United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). The question for this Court is whether this presumption applies to counsel's performance during Robertson's juvenile transfer hearing. We hold that it does.

In *Cronic*, which was released the same day as *Strickland*, the Supreme Court stated that a presumption of prejudice arises, and the *Strickland* analysis is abandoned, only under three extreme circumstances: (1) where the accused is completely denied counsel, (2) where counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, and (3) where, although counsel is available to assist the accused, the likelihood that any lawyer could provide effective assistance is so small that a presumption of prejudice is appropriate. *Cronic*, 466 U.S. at 659, 104 S.Ct. at 2047. The Court held that such situations "involved circumstances 'so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Bell v. Cone*, 535 U.S. 685, 695, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (quoting *Cronic*, 466 U.S. at 658–59, 104 S.Ct. at 2039). Every other kind of ineffective assistance claim is subject to the *Strickland* analysis. *Van v. Jones*, 475 F.3d 292, 304 (6th Cir.2007) (citing *Bell*, 535 U.S. at 695–96, 122 S.Ct. at 1850–51).

On appeal, Robertson contends that his trial counsel failed to subject the Commonwealth's case to meaningful cross-examination. Since *Cronic,* law regarding what constitutes such a failure has emerged. The Supreme Court has since found that "the attorney's failure must be complete." *Bell v. Cone,* 535 U.S. at 697, 122 S.Ct. at 1851. In other words, the failure must be throughout the proceeding as a whole and not limited to one part of it. *Id.* In *Bell,* the Court came to this conclusion, and in doing so, denied the defendant relief because counsel's failure "to adduce mitigating evidence and [waived] closing argument" occurred during only one brief portion of the sentencing hearing. *Bell,* 535 U.S. at 697, 122 S.Ct. at 1852. Federal courts have also since applied this principle and helped to define what a "complete" failure looks like. *See Sherrod v. Tennessee,* 61 Fed.Appx. 936, 938 (6th Cir.2003) (counsel's presentation of mitigating evidence during trial meant his failure to present the same at sentencing was not a "complete" failure to challenge the Commonwealth's case); and *Quintero v. Bell,* 368 F.3d 892, 893 (6th Cir.2004) (attorney's acquiescence to seven obviously tainted jurors remaining on the panel throughout the trial was a "complete" failure under *Cronic* ).

There is no question that the trial court in this case found trial counsel's deficiency during the juvenile transfer hearing to be "complete." It said so in the strongest possible terms, declaring counsel to have "completely abdicated his responsibility to his client at a critical proceeding." The trial court correctly based this conclusion on trial counsel's own testimony that he did not prepare for the hearing, did not interview witnesses, did not research relevant law, did not challenge blatantly incorrect testimony and ultimately relied on the judge's experience to protect his client's interests throughout the hearing. Never-

theless, we find that this conclusion required the trial court to apply the analysis in *Cronic,* not *Strickland.*

The trial court concluded in its order that, given the juvenile court's consideration of appropriate legal factors, even if trial counsel's performance had been sufficient, no "reasonable probability of a different result," and thus no prejudice, existed. In sum, the trial court applied the *Strickland* analysis for prejudice. However, the legal truth established by the precedent we lay out above is that once the trial court found that trial counsel had so completely abdicated his responsibility to Robertson at a critical stage in the proceeding, the trial court was required to apply *Cronic* 's presumption of prejudice.

■ It is clear from the evidence on the record and presented at the RCr 11.42 hearing that, by failing to prepare, by failing to present any lay or expert witnesses or documentary evidence, and by failing to obtain the legal and factual knowledge necessary to effectively cross-examine the Commonwealth's witnesses, trial counsel "entirely fail[ed] to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047. As a result, we find that the juvenile transfer hearing produced a "presumptively unreliable" result which cannot survive our review. *Id.* Furthermore, the presumption of an unreliable result may not be rebutted by any showing of harmless error, as our courts have held that the most egregious denials of counsel are not subject to such a review. *See Stone v. Commonwealth,* 217 S.W.3d 233 (Ky.2007); *see also Van, supra,* at 311–312, and *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) ("The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the

amount of prejudice arising from its denial.") (*overruled on other grounds* ).

### Appropriate Remedy Considering Robertson's Age

Kentucky Revised Statutes (KRS) 635.060, *et seq.* limits the age of individuals over whom a juvenile court may exercise dispositional power to a maximum of twenty-one. Therefore, this case presents a compelling and unique question regarding what remedy Robertson, a man in his thirties, can receive under the law following a finding that his juvenile transfer hearing and subsequent conviction are invalid. Robertson urges us simply to grant him a new transfer hearing before a juvenile court. However, due to the age limit in the juvenile code and how far in excess of that limit Robertson is, the matter is more complex than that.

In arguing for a new hearing, Robertson cites *Buchanan v. Commonwealth,* which states,

> [w]e do not agree that ... a juvenile, having become an adult, could not effectively reconstruct the circumstances which existed at the time of the waiver hearing ... In light of the age of majority which prevails in this Commonwealth and the ordinary time span of the appellate process, it is likely that a Kentucky juvenile who had been transferred to circuit court would be younger than 21 when his case was remanded.

652 S.W.2d 87, 88 (Ky.1983). Similarly, our Supreme Court has held that when issues regarding a transfer order are raised on direct appeal, because of the relatively short amount of time which elapses during the appellate process, "there is a practical possibility that the juvenile defendant can still receive the benefit of an adjudication in juvenile court." *Schooley v. Commonwealth,* 556 S.W.2d 912, 918 (Ky.App.1977). The same cannot be said for Robertson.

Robertson's direct appeal occurred fourteen years ago. His first and only attempt at RCr 11.42 relief has lasted a decade, eclipsing the "ordinary" appellate process spoken of in *Buchanan.* Therefore, there presently exists no possibility that Robertson could receive the benefit of a juvenile court adjudication. He is simply too advanced in age. However, we look to the federal courts for further guidance.

In *Kent v. United States,* 383 U.S. 541, 564–65, 86 S.Ct. 1045, 1058–59, 16 L.Ed.2d 84 (1966), and *White v. Sowders,* 644 F.2d 1177, 1185 (6th Circ.1980), the federal judiciary provided a possible remedy for such dilemmas. In both cases, following the federal District Court's consideration of a writ of *habeas corpus* regarding a juvenile transfer order, the respective Courts remanded the matter of transfer for a *de novo* review before the court that had initially considered the defendant's *habeas corpus* petition. In doing so, the Courts concluded that simply sending the matter back before the juvenile court would be "unavailing since that court no longer had jurisdiction." *White,* 644 F.2d at 1185. We believe a similar remedy is appropriate in this case.

To send Robertson back before a juvenile court would be to ask the juvenile court to operate under the fiction that he could still benefit from a trial as a juvenile. In other words, if, as Robertson requests, the juvenile court held a new transfer hearing, it would be impossible for the court to hear proof regarding, for example, what rehabilitative services offered by state and juvenile programs in 1996 Robertson could now receive. There are none. To grant a new juvenile transfer hearing would also force the juvenile court to assume jurisdiction over a case and a person over whom it not longer holds the "power

of disposition." *Schooley, supra,* at 918. If the juvenile court concluded from the hearing that it must retain jurisdiction over Robertson's case, it would have no authority under the juvenile code to sentence him or otherwise dispose of his case. Such a result is absurd and in contravention of both justice and judicial economy.

■ Instead, for future such cases, we feel that a remedy like the one proposed in *Kent* and *White* best addresses both the grave constitutional deprivation that has occurred and the unprecedented legal conflict between the adult defendant's age and our juvenile code. Where a juvenile transfer hearing's result has been found to be "presumptively unreliable" under *Cronic* and the defendant's current age prohibits his return to the juvenile system, the proper remedy is the remand of the matter for a *de novo* review before the trial court regarding whether transfer was appropriate under Kentucky law. At this hearing, "the parties may introduce any record of the juvenile court proceedings or any other evidence relevant to the issues as they existed at that time." *White, supra,* at 1185. If the court finds that transfer from juvenile court was improper, the circuit court's jurisdiction over the matter shall cease as a matter of law. If the court determines that waiver was appropriate, the matter may proceed for further proceedings, including a new trial, if such has been granted.

■ In Robertson's case, however, a fact which is unlikely to recur in future cases prevents us from even remanding his case to circuit court. While the "law of the case" doctrine does not preclude this Court from reviewing the issue of ineffective assistance of counsel at the transfer hearing, it would preclude the trial court from con-

sidering whether transfer was appropriate. That very question was decided by the Supreme Court in Robertson's 1999 direct appeal, and we decline to remand this case back to the trial court for a superfluous hearing, the conclusion of which can only be that of the Supreme Court's 1999 opinion. Therefore, we affirm, in result only, the trial court's order denying Robertson a rehearing regarding transfer. Regrettably, in this extremely unique and challenging case, Robertson seems to have suffered a wrong for which the law provides no true remedy.

For the reasons stated herein, the trial court properly vacated Robertson's convictions. In addition, we conclude that Robertson is left without a remedy for the ineffectiveness of his counsel during his juvenile transfer hearing. Accordingly, we affirm.

THOMPSON, Judge, Concurs.

STUMBO, Judge, Concurs and Files Separate Opinion.

STUMBO, Judge, Concurring:

I concur with the majority opinion, but write to emphasize that were the RCr 11.42 evidentiary hearing not so thorough and comprehensive, I would not have.[1] The evidence presented addressed the issue raised in the RCr 11.42 by detailing at length the alternative programs that were available to a juvenile sex offender at the relevant time. The trial court considered that evidence in concluding that Appellant would still have been tried as an adult. I believe that there was sufficient evidence to support that decision in this record.

---

1. I would note that the record originally made in the juvenile court so many years ago was not made a part of this record.