THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSEPH R. THREADGILL, JR., Defendant-Appellant.

Second District    No. 2—86—0894

Opinion filed February 26, 1988.

G. Joseph Weller and Patrick M. Carmody, both of State Appellate Defender's Office, of Elgin, for appellant.

Charles R. Hartman, State's Attorney, of Freeport (William L. Browers

and Martin P. Moltz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, Joseph R. Threadgill, Jr., was found guilty in a jury trial in the circuit court of Stephenson County of the offenses of residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3) and misdemeanor theft (Ill. Rev. Stat. 1985, ch. 38, par. 16—1(a)(1)). He was sentenced to concurrent terms of imprisonment of 7 years and 60 days, respectively.

On appeal, defendant contends that the evidence was insufficient to sustain his conviction beyond a reasonable doubt and, alternatively, that he is entitled to a new trial because of numerous improper comments made during the prosecutor's closing argument.

The offenses in question took place on the evening of May 2, 1986. Officer Michael Hannan of the City of Freeport police department testified that he was watching defendant's apartment that evening. At about 7:30 p.m., he saw defendant, whom he had seen 25 or 30 times previously, leave his apartment building and enter his car, a blue Chevrolet Nova. Hannan was approximately 300 feet away from defendant at this time, and it was still daylight or dusk. Hannan followed defendant as he drove through town. Defendant stopped at a number of locations, including a home and a Taco Bell restaurant. Later, defendant drove to the 300 block of Avon Street in Freeport. He sat in his car at this location for about five minutes. Defendant then got a black jacket and a pair of white gloves from the trunk of his car, donned these items, and walked around the neighborhood. Hannan saw defendant walk from the back of a home at 332 West Homer to the front door of the home. Defendant shook the front door and looked into a window. He then returned to the back of the home.

About five minutes later, at about 9:15 p.m., Officer Pat Young of the Illinois State Police, who also was involved in the surveillance, stated over the radio that he had just seen a flicker of light from inside the home at 332 West Homer. Hannan then approached the front door of the house while three or four other officers approached the back door, which had been forced open. One of the others announced that they were police officers, that they knew who the intruder was, and that he should come out of the house. The intruder then walked out the front door. Hannan announced who he was and asked the intruder to step down off the porch and lie on the ground. Hannan shined a flashlight in the intruder's face. He was within five feet of the person. He stated that defendant was the intruder.

According to Hannan, defendant had a candlestick in his hand as he exited the front door. When defendant stepped off the porch, he bent over as though he was going to comply with Hannan's instructions and lie down. Instead, however, defendant sprinted away, dropping the candlestick in the front yard. Hannan testified that defendant ran within two or three feet of him when defendant sprinted away.

Freeport police officer Robert Smith testified that he participated in the surveillance of defendant's apartment and had followed defendant when he saw that defendant left in a blue Nova. He observed defendant make numerous stops and eventually saw him stop on Avon Street, exit, and remove a jacket and gloves from the trunk of the Nova. He saw defendant walk to 332 West Homer and go to the back and front of the house. Smith further stated that when the officers moved in to effect an arrest, he went to the rear of the home. When he later came to the front of the house, he ran after defendant when defendant sprinted away from Officer Hannan. Smith chased defendant for about two blocks, then saw him run between two houses and down a lighted driveway. The lighting was provided by an incandescent yard light atop a garage. Smith was about 20 to 25 feet away while defendant was running down the driveway. Once Smith reached the driveway, he lost sight of defendant and did not see him again. Smith testified that he had seen defendant 30 to 40 times prior to the night in question.

For the defense, Richard Newton, a lifelong friend of defendant's, testified that he borrowed defendant's blue Chevrolet Nova on the night of May 2, 1986, and drove it around for awhile and went to the Taco Bell restaurant. After Newton left the restaurant, the car stalled, so Newton walked home. Newton admitted that he had been convicted of the offense of misdemeanor theft by deception. Newton also admitted that he told two police officers incorrectly that he borrowed defendant's car on May 3, not May 2.

Anthony Pugh testified that he was at the Silver Knight's Club on the night in question. He saw defendant arrive between 8:30 p.m. and 9 p.m. He purchased a beer for defendant. Pugh stated that when he left the club at 10:30 p.m., defendant was still present.

Lennet Gosset, another friend of defendant's, testified that she was working at the Silver Knight's Club on May 2, 1986. She began charging admission at about 9 p.m. and saw defendant enter shortly thereafter, possibly as late as 9:30 p.m. She stated that defendant was still present when she left at 1:30 a.m. Defendant did not testify.

In rebuttal, David Kentner, a Freeport police officer, stated that

when he interviewed Gosset approximately a week before the trial, she was not sure what time defendant had entered the Silver Knight's Club on May 2, 1986. Kentner further testified that he also saw defendant enter his car at his apartment and later saw him drive to various locations on the evening in question. At one point, defendant parked near the corner of Shawnee and Float Streets and entered a home. When defendant walked back to his car, Kentner was only 15 feet away. Kentner followed defendant to the Taco Bell restaurant and saw defendant take the food he had purchased at Taco Bell to a nearby parking lot. Kentner was across the street and observed defendant through binoculars while defendant was eating. Kentner also saw defendant standing on the sidewalk near his car after he had parked it on Avon Street. Kentner was about one-half block away at the time. Kentner testified that he had seen defendant about 20 to 25 times prior to the night in question. Other rebuttal witnesses testified that they spoke to Richard Newton on May 6, 1986, and he said that he had borrowed defendant's car on May 3, not May 2.

Defendant first contends on appeal that the State failed to prove him guilty beyond a reasonable doubt because the circumstances of the officers' distance from the person they observed and the poor lighting conditions cast doubt on the identification of defendant as the perpetrator. We disagree.

It is the jury's responsibility to resolve factual disputes, assess the credibility of the witnesses, and determine the weight and sufficiency of the evidence, which will not be reversed unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the guilt of defendant remains. (*People v. Yates* (1983), 98 Ill. 2d 502, 518-19, 456 N.E.2d 1369.) Where the identification of the accused is at issue, the testimony of one witness is sufficient to convict, even though such testimony is contradicted by the accused, provided the witness is credible and viewed the accused under such circumstances as would permit a positive identification to be made. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

In the instant case, several police officers who were acquainted with defendant observed him throughout the evening in question from the time he left his apartment to his flight from them after being observed at the burglarized premises. He was positively identified by Officer Hannan, who shined a flashlight into defendant's face from five feet away when he exited the burglarized home. He was chased for two blocks by Officer Smith and was identified by him under adequate lighting conditions. Moreover, these two officers and a third officer, David Kentner, all had followed defendant earlier that

evening and directly contradicted his defense that his car had been loaned to his friend, Richard Newton. Further, defendant's alibi evidence that he could not have been the person who entered the home in question because he was at the Silver Knight's Club was disputed by legitimate inferences that could be drawn from the fact that the alibi witnesses were his friends and had given prior contradictory statements. The evidence in this record is more than sufficient to establish defendant's guilt beyond a reasonable doubt.

Defendant's second contention is that he was denied a fair trial by the prosecutor's numerous prejudicial comments in final argument. In this regard, defendant claims error in the following manner of argument in that the prosecutor: implied there was a greater credibility because the State's witnesses were police officers; misstated several facts and referred to evidence not in the record; aroused the jurors' passions and prejudice by proclaiming a dereliction of police duties would result from a not guilty verdict; improperly impugned the integrity of defense counsel, defendant, and the defense witnesses; and attempted to shift the burden of proof onto defendant.

We choose to address first defendant's contention that the prosecutor's final argument "aroused the jurors' fear, passion, and prejudice by proclaiming a dereliction of police duties would occur if the defendant was acquitted." Defendant maintains that the jurors were repeatedly told by the prosecutor that future police conduct and attitudes would be affected by their verdict, implying that a verdict of not guilty would be tantamount to a failure to support law enforcement efforts. The State responds that the argument was a proper urging of the fearless administration of the law.

The remarks complained of are as follows:

> "And if you believe that these three officers lied about this and they came in and framed the defendant there probably isn't anything I can say that can convince you. I don't know how that would come about but these are your officers. They are out there at night trying to stop, prevent, and apprehend people who are committing home burglaries at night. And they are out there, they don't know what they are up against. They don't know if somebody has a gun or a knife. *They are out there trying to protect you and your family. They are putting their lives on the line for you.* I want you to think about that. They are telling you they saw the guy and they have no doubt. They knew him before; they saw him many times that night and it was the guy. That's what they sat there and they told you. *Now you can either follow up on that and back them up or*

*you can turn your back on them.*

\* \* \*

Somebody is lying in this situation. Between Richard Newton and Anthony Pugh and the three police officers. And this is your community. It is your hometown and you are going to make a decision whether you are going to take the word of a convicted thief and somebody like Anthony Pugh over the word of three police officers. *It is going to be your decision in this case and the decision you are going to make is going to have an effect on how people conduct themselves in your community and what the police feel as far as support from you.*

\* \* \*

Mr. Fulton: Thank you, your Honor. I'd like to differ with Mr. Graff just a little bit because I see things a little bit differently. Mr. Graff [Defense Attorney] says you don't have any job to send a message. What you do doesn't have any effect because the judge is going to take care of it. If you cut him loose nothing is going to be done to him and that's it, boom. And if you don't think what you do today is going to send a message to the Joe Threadgills of the world and your police officers, you're wrong. *Because you can either back them up when they're out there at night risking their lives for you and your family or you can turn your back on them.*

\* \* \*

The officers—I will tell you either I've got some really bumbling idiots for police officers or they were doing their job and told you the truth of what happened. And that's the message you're going to send them. You are going to tell them when Mike Hannan says I was five feet away from the guy, shined a flashlight in his face when he ran past me I was two to three feet away from him. Bob Smith says I saw the guy. I know the guy. I saw his face. It was him. Dave Kentner says I walked right past him. *Now you are going to send a message to those guys either going to back them up on this or you're going to say that if the defendant can come up with some cock and bull story we'll cut him loose.*

\* \* \*

I have three officers who say this was the guy, he was at the scene where the burglary was committed. He is the one who did it. Three officers who know him very well. They say it was him. And as I said what you're going to do I differ with Mr. Graff. *You are going to send a message. You are going to send a*

*message to these guys who are out there in the middle of the night trying to protect you and your families. You are either going to say we're going to back you up and we believe what you told us and we believe you were straight and you were professionals and never been any motive to show why they want Joe Threadgill. \*\*\* You're either going to send a message to them that you're going to back them up and you're going to believe when they look you in the eye, they tell you this is the way it happens.* When Mike Hannan says I was five feet away and I shined a flashlight in his face and I was two or three feet away and he ran right past me, I saw him, and I know him and it was the defendant. Either you're going to back him up or you're going to send a message to the Joe Threadgills of the world and the convicted thieves, Richard Newtons and Anthony Pughs that you can commit whatever burglary you want in our community, just find someone that can give us a song and dance about being in a crowded place where the burglary was committed, you can do whatever you want. *Either going to send a message to the defendant or you're going to send a message to the police in this case.* I know you're going to do the right thing." (Emphasis added.)

■ We note that defendant failed to object to these remarks at trial and did not file a post-trial motion for a new trial. Generally, such a failure constitutes a waiver of the claimed error. (*People v. Shum* (1987), 117 Ill. 2d 317, 348, 512 N.E.2d 1183; *People v. Whitehead* (1987), 116 Ill. 2d 425, 446-47, 508 N.E.2d 687.) Defendant argues, however, that these arguments amounted to plain error (107 Ill. 2d R. 615(a)) and, alternatively, that he was denied his constitutional right to the effective assistance of counsel through trial counsel's omissions in failing to object to the arguments and to file a post-trial motion. To invoke the plain error exception to the waiver rule, it must be plainly apparent that the error is so prejudicial that real justice has been denied or that the verdict of the jury may have resulted from the error. *People v. Johnson* (1986), 114 Ill. 2d 170, 198, 499 N.E.2d 1355; *People v. Owens* (1984), 102 Ill. 2d 88, 104, 464 N.E.2d 261; see *Darden v. Wainwright* (1986), 477 U.S. \_\_\_\_, \_\_\_\_, 91 L. Ed. 2d 144, 157, 106 S. Ct. 2464, 2471-72 (relevant question is whether the prosecutor's comments so infected the trial with unfairness as to make the resulting conviction a denial of due process).

■ While attorneys are allowed considerable leeway in making closing and rebuttal arguments (*People v. Morgan* (1986), 112 Ill. 2d 111, 131, 492 N.E.2d 1303) and may comment upon the evil results of

crime (*People v. Jackson* (1981), 84 Ill. 2d 350, 360, 418 N.E.2d 739), statements made in closing argument which serve no purpose except to inflame the jury constitute error. (*People v. Tiller* (1982), 94 Ill. 2d 303, 321, 447 N.E.2d 174; *People v. Lindsay* (1952), 412 Ill. 472, 484-85, 107 N.E.2d 614.) A careful examination of the prosecutor's comments quoted above leads us to conclude that they were calculated to arouse the fears and prejudices of the jurors and, therefore, exceeded the bounds of propriety.

The prosecutor's repeated references that the decision of the jurors in this case would indicate whether they supported their police officers who were out protecting them, and that their decision would affect what the police felt as far as support from the jurors, was clearly intended to imply that a not guilty verdict was tantamount to not supporting law enforcement in the community. This line of argument was calculated to inflame the jurors' fears that if they found the defendant not guilty, they were turning their backs on the Freeport police department, who were risking their lives for the jurors. This argument was uncalled for and exceeded the bounds of propriety. (See *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363; *People v. Plair* (1977), 51 Ill. App. 3d 75, 81, 366 N.E.2d 410.) Further, these comments bore no relationship to the evidence and, instead, diverted the jurors away from the evidence by turning the trial into a test of the jurors' support for their local police officers.

Moreover, the prosecutor improperly attempted to play upon the personal circumstances and fears of the jurors when he repeatedly informed the jurors that the police were out there protecting you and your family, that they were putting their lives on the line for you, and that now you can "back them up or you can turn your back on them." See *People v. Davis* (1970), 46 Ill. 2d 554, 560, 264 N.E.2d 140.

■ Because these repeated comments went far beyond the issues raised by the evidence and were highly inflammatory, prejudice resulted to the defendant sufficient for us to conclude that real justice was denied and that the verdict of the jury may have resulted from the error. The proofs as to identity in this case against defendant consisted entirely of testimonial evidence by the Freeport police officers. Defendant introduced testimonial evidence to rebut the police testimony. Thus, the credibility of the witnesses was the critical issue for the jurors. The evaluation of that evidence by the jurors was so prejudiced by the prosecutor's improper arguments as to require reversal of the convictions and remandment for a new trial.

After reviewing the other complained-of arguments, we find that generally they were within the range of permissible comment except

for certain misstatements of the evidence which, we assume, will not be repeated on retrial.

For the foregoing reasons, the judgments of the circuit court of Stephenson County are reversed, and the cause is remanded for a new trial.

Reversed and remanded.

UNVERZAGT and INGLIS, JJ., concur.