## STATE

v.

## Luigi RICCI.

No. 93–168–C.A.

Supreme Court of Rhode Island.

March 31, 1994.

Jeffrey Pine, Atty. Gen., Annie Goldberg, Sp. Asst. Atty. Gen., Aaron Weisman, Chief, Appellate Div., for plaintiff.

Richard Casparian, Public Defender, Paula Lynch Hardiman, Asst. Public Defender, Paula Rosin, Asst. Public Defender, for defendant.

## OPINION.

MURRAY, Justice.

This matter came before this court pursuant to an order requiring both parties to appear and to show cause why the defendant's appeal should not be summarily decided. The defendant, Luigi Ricci (Ricci), appeals from Superior Court jury convictions on robbery and kidnapping charges. The trial justice sentenced the defendant to twenty-five years with ten years to serve on each

conviction. These sentences were to run concurrently.

The victim, David Soares (Soares), testified to the following. On May 12, 1991, at approximately 10 p.m., he encountered two people as he walked to his parked car on Audrey Street in Providence. Soares stated that he knew one of them, a female to whom he referred as "Chrissy," as a resident of Audrey Street. Chrissy introduced the male who was with her as her brother and then asked Soares if he could give them a ride to a nearby convenience store. Soares gave the couple a ride to the store and then back to the Audrey Street location. Upon their return to Audrey Street, Soares testified that the male, who was seated in the vehicle's rear seat, wrapped his left arm around Soares' neck, placed a "sharp object [against his] side," and demanded money.

Soares testified that the man then told Chrissy to "look for money." Chrissy found Soares' wallet and removed "eighty to ninety" dollars. The man then instructed Soares to drive to another location and not "to try anything stupid" or he would kill him. Soares stated that the man told him that he did not care if he went to jail because he had been in jail before. Upon reaching a Waverly Street location, the man instructed Soares to stop. Chrissy then left the vehicle and went into a house. Upon her return to the vehicle, Chrissy informed the man that she had "got[ten] the stuff." Soares stated that the man kept his arm around him and maintained the sharp object at his side throughout the incident. Soares stated that he was continually threatened not to try "anything stupid" or he would be killed.

After Chrissy got back into the vehicle, the man instructed Soares to drive back to the Audrey Street location. He subsequently was ordered to drive to another location in Providence where he dropped the couple off. Soares stated that as the man was leaving the vehicle, he told him that "if I call the police about this he will have his brother find me and kill me." Soares then drove to a local market where he remained in the parking lot, contemplating the threats, for approximately one hour. He subsequently decided to telephone the police. Soares explained that he did not contact the police immediately because the man had mentioned that he knew where Soares' children lived and Soares feared for their safety. Several days later Soares identified Ricci as his assailant at a photographic lineup at the Providence police station.

Ricci raises five issues in his appeal. He contends that the trial justice erred by (1) admitting testimony that he had been in jail before, (2) refusing to admit a police report as a full exhibit, (3) allowing a witness to testify despite the state's failure to identify him as a potential witness, (4) admitting testimony that implied that drugs were purchased with the stolen money, and (5) not finding that the photographic array utilized in identifying Ricci was impermissibly suggestive and prejudicial.

▮ Ricci first contends that the trial justice erred when he refused to strike Soares' testimony that Ricci stated that he did not care if he went back to jail because he had been there before. Ricci avers that this is inadmissible testimony regarding prior bad acts. The state argues that the testimony was relevant and that the trial justice did not abuse his discretion in allowing the testimony.

Rule 404(b) of the Rhode Island Rules of Evidence prohibits the use of evidence of a person's other crimes, wrongs, or acts to prove the person's character is such that his present act is in conformity with other crimes or wrongs. Evidence of other acts is admissible when the other acts

> " 'are interwoven with the offense for which the defendant is being tried,' * * * or when the other acts are relevant to prove an accused's 'motive, opportunity, intent, preparation, plan, knowledge,
>> identity, absence of mistake or accident, or to prove that defendant feared imminent bodily harm and that fear was reasonable.' " *State v. Brown,* 626 A.2d 228, 233 (R.I.1993).

We do not believe that this evidence represents a Rule 404(b) problem. The mere fact that a statement might be construed as an allusion to prior incarceration, and thus potentially suggest previous criminal conduct,

does not mandatorily require the exclusion of the statement. *State v. Gordon,* 508 A.2d 1339, 1348 (R.I.1986). The statement was not admitted as evidence of a prior bad act on Ricci's part, nor was it admitted to imply bad character. We believe that the evidence was admitted to demonstrate Ricci's consciousness of his guilt of the crimes charged. *See id; see also State v. Payano,* 528 A.2d 721 (R.I.1987). The probative value of the statement outweighed any danger of undue prejudice to Ricci.

Ricci next contends that the trial justice erred by refusing to receive a police report into evidence. Patrolman Daniel O'Connell (O'Connell) of the Providence police department testified that he responded to Soares' telephone call. O'Connell testified that he took Soares' statement and completed a "uniform[ ] police report." During his testimony O'Connell referred to the report to refresh his memory. He subsequently testified to Soares' description of the assailants as summarized in his report. Ricci moved to have the police report admitted into evidence because he alleged that it demonstrated that Soares did not know his assailants and that he met them while they were hitchhiking. Ricci contends that this position was inconsistent with the statement Soares later gave detectives averring that he knew his assailants.

■ Rule 803(5) of the Rhode Island Rules of Evidence, an exception to the hearsay rule, provides:

> "*Recorded Recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to *testify fully and accurately,* shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence and received as an exhibit." (Emphasis added.)

The requirements for the admissibility of a memorandum of past recollection recorded are that the witness must (1) have firsthand knowledge of the event in question, (2) have written the memorandum at or near the time of the event while the witness had a clear memory of the event, (3) be unable to recall the incident independently, and (4) attest to the accuracy of the memorandum. *State v. Vento,* 533 A.2d 1161, 1165 (R.I.1987); 2 *McCormick on Evidence,* ch. 28, § 279 at 254 (4th ed. Strong 1992). The record reflects that these requirements were fulfilled.

■ In past recollection recorded the witness lacks an independent recollection of what he or she wrote. *State v. Contreras,* 105 R.I. 523, 253 A.2d 612 (1969). "[S]ince the writing will in essence be an embodiment of his [or her] testimony, he [or she] will have used it in testifying as a substitute for any present recollection." *Id.* at 540, 253 A.2d at 621. In the instance wherein the witness adopts the document as his or her testimony, as a result of his or her lack of present memory from which to recount the event, the document is shown to the jury. *State v. Mastracchio,* 546 A.2d 165, 172 (R.I. 1988). We have emphasized, however, that the rule merely requires an inability to " 'testify fully and accurately'; *it does not demand a total lack of memory concerning the event."* (Emphasis added.) *Id.* at 172; *see also* 2 *McCormick on Evidence,* ch. 28, § 282 at 257–58. Although the witness may have some present memory of the event, the prior recorded statement would appear more complete and more reliable than the fragmented-memory testimony. *See generally State v. Bindhammer,* 44 N.J. 372, 209 A.2d 124 (1965).

■ In present recollection refreshed or revived, the witness will give his or her present memory of the event as refreshed by referral to the memorandum. *Contreras,* 105 R.I. at 540, 253 A.2d at 621–22; *State v. Bradshaw,* 101 R.I. 233, 221 A.2d 815 (1966). When a witness is testifying from present memory, the memorandum itself should not be admitted as substantive evidence. *Mastracchio,* 546 A.2d at 172; *Contreras,* 105 R.I. at 540, 253 A.2d at 622. Because the memorandum is used as an aid to refresh a memory rather than as adoptive testimony, there is no reason for the jury to view the memorandum. This court, in dicta, has also questioned the significance of the distinction between past recollection recorded and present

recollection refreshed, noting that " '[T]he modern—and desirable—trend is in the direction of the elimination of fiction and pretense and the straightforward admission of the record as substantive evidence.' " *Mastracchio*, 546 A.2d at 172 n. 7.

■ The transcript reflects the following colloquy between O'Connell and the prosecutor:

"[*The State*]: Do you recall if you received a description as to the clothing of the individuals?

"[*O'Connell*]: Yes.

"[*The State*]: Do you recall what that description was? Male?

"[*O'Connell*]: I have it in my report.

"[*The State*]: Looking at your report because you do not remember?

"[*O'Connell*]: Shorts and a tee shirt, something like that.

"[*The State*]: Do you not have a clear memory of this moment? Would—

"[*O'Connell*]: No."

O'Connell then proceeded to review his police report and testified regarding Soares' description of the two assailants.

The colloquy convinces this court that O'Connell was not testifying from his present memory. Consequently his testimony represented past recollection recorded, and upon request of Ricci the police report should have been admitted into evidence. *Cf. Mastracchio*, 546 A.2d at 171–72 (classifying previously identified and initialed photographs of the victim and the defendant as past recollection recorded even though the identifying witness had some memory of the identity of the defendant).

■ Although the trial justice committed error by refusing to admit the report, we do not believe that this error requires reversal. Viewing the record in its totality, we conclude that the admission of the police report would not have had any impact on the trial. The record reflects that Ricci did in fact have a copy of the police report. The record also reflects that Ricci sufficiently cross-examined both Soares and O'Connell regarding what he viewed as inconsistencies between Soares' testimony and what the police report repre-

sented that Soares informed O'Connell. Consequently the statements that Ricci viewed as inconsistent were already in evidence. Furthermore we believe Ricci's position regarding the police report's inconsistencies is without merit. The police report lacks any direct statement that Soares informed the police that he did not know, or that he was not acquainted with, his assailants. Any inference that Soares withheld informing O'Connell that he knew the identity of his assailants was sufficiently addressed on cross-examination. Additionally, any possible inconsistencies between the terms "hitchhiking" and "bumming a ride" do not deserve comment.

Ricci next contends that the trial justice erred by allowing Detective Frank Altomari (Altomari) to testify despite the state's failure to identify him as a potential witness in pretrial discovery. The state contends that Ricci abandoned his objection to the testimony by concurring with the trial justice that Altomari's testimony was not a surprise.

The state's response to Ricci's discovery request listed two witnesses, O'Connell and Soares. Rule 16 of the Superior Court Rules of Criminal Procedure outlines the guidelines for the discovery process. This rule imposes a continuing obligation upon the parties to comply with requests for discovery. Super.R.Crim.P. 16(h). The rule permits a trial justice to prohibit witnesses from testifying if their identities or their statements were not disclosed to the requesting party. Super.R.Crim.P. 16(i).

The trial justice permitted Altomari to testify over Ricci's objection because Altomari had testified at the hearing on Ricci's motion to suppress. The record reflects the following:

"[*The Court*]: Well, I assume he's going to testify, basically, to the same material he testified to yesterday on the photo spread. [Referring to the motion to suppress hearing.] Is that correct?

\*　　\*　　\*　　\*　　\*　　\*

"[*The State*]: That is correct.

"[*The Court*]: That is not a surprise to you.

"[*Ricci's counsel*]: No, if that is what he is testifying to.

"[*The Court*]: He may testify to that."

The trial justice permitted Altomari to testify; however, he limited the scope of Altomari's testimony to the information to which he testified at the suppression hearing. Ricci's counsel later objected when the witness proposed to testify to matters beyond those addressed at the motion-to-suppress hearing. Consequently, contrary to the state's position, we find that this matter was sufficiently preserved for our review.

■ We have held that the trial justice is in the best position to determine whether any harm has resulted from noncompliance with discovery motions. *State v. Coelho*, 454 A.2d 241, 244–45 (R.I.1982). That determination should not be disturbed absent a clear abuse of discretion. *Id.* at 245. The purpose of Rule 16 is to eliminate surprise and procedural prejudice at trial. *State v. Brisson*, 619 A.2d 1099 (R.I.1993). When reviewing a Rule 16 violation, the trial justice should consider "(1) the reason for nondisclosure, (2) the extent of prejudice to the opposing party, (3) the feasibility of rectifying that prejudice by a continuance, and (4) any other relevant factors." *Id.* at 1102 (quoting *Coelho*, 454 A.2d at 245).

■ Analyzing this case under the *Coelho* test, we determine that Ricci did not suffer any prejudice. The record reflects that Ricci was not surprised by Altomari's testimony. Altomari's police report was included in the discovery package. Additionally, the day before trial Altomari testified at Ricci's suppression hearing. In his brief Ricci points out that "Altomari sat beside the prosecutor throughout * * * [the] trial." At one point during the trial the trial justice, in order to gauge the time the state needed to finish presenting its witnesses, asked the state how many other witnesses it planned to present. The state responded, "I have one short witness, and then the detective." At that time Ricci did not question the state's presentation of witnesses.

The record reflects that Altomari's testimony was sufficiently limited to the subject matter of his testimony at the motion-to-suppress hearing. Consequently Ricci was not surprised by this testimony; in fact he was aware of its content. The record also reflects that Ricci cross-examined Altomari at length. We find no element of surprise on the part of Ricci. Thus, viewing the record in its totality under the *Coelho* test, we find that Ricci suffered no prejudice resulting from the state's failure to list Altomari as a witness.

Ricci next contends that the trial justice erred by permitting prejudicial testimony implying that drugs were purchased with the money allegedly stolen from Soares. Soares testified that upon Chrissy's return from the unidentified house she informed Ricci that she "had got[ten] the stuff."

The record reflects that counsel did not raise a timely objection to this testimony. It is a well-settled rule that "issues not preserved at trial by a specific objection, sufficiently focused so as to call the trial justice's attention to the basis for [the] objection, may not be considered on appeal." *State v. Warren*, 624 A.2d 841, 842 (R.I.1993). We are thus precluded from reviewing this contention.

Lastly, Ricci contends that the photographic array the police used to identify him was suggestive and prejudicial. We believe that this contention is lacking in any merit. After a lengthy pretrial suppression hearing, the trial justice found that the photographic array was not inherently suggestive. In fact the trial justice specifically noted that "[l]ooking at the faces of the individuals that are depicted, this is about as fair an array as I think I have seen presented during the course of a hearing such as this." Our review of the record supports the trial justice's conclusion. We do not believe that the identification procedure was unnecessarily suggestive. *See generally State v. Gardiner*, 636 A.2d 710 (R.I.1994). Therefore, the trial justice did not err in admitting the identification testimony.

After hearing the arguments of counsel and reviewing the memoranda submitted by

the parties, this court concludes that cause has not been shown. Consequently the defendant's appeal is denied and dismissed. The judgment of the Superior Court is affirmed, and the papers of this case are remanded to the Superior Court.