THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SYLVESTER GRAY, Defendant-Appellant.

First District (3rd Division)   No. 1—08—2952

Opinion filed December 22, 2010.

Michael J. Pelletier, Tomas G. Gonzalez, and Colby M. Green, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Miles J. Keleher, and Conor Fleming, Assistant State's Attorneys, of counsel), for the People.

JUSTICE NEVILLE delivered the opinion of the court:

This case involves the limits on the use of a past guilty plea to impeach a defense witness. A grand jury indicted Sylvester Gray for the murder of Michael Sommerville and the aggravated battery of Dominique Washington. At trial, the State's witnesses identified Gray

as the shooter, while defense witnesses identified Gray's cousin, Darral Geder, as the shooter. One of the defense witnesses had pled guilty to illegal possession of a gun in connection with the same incident. The prosecutor introduced into evidence at Gray's trial the prosecutor's statement of the factual basis for that witness's guilty plea. The factual basis included collateral matters not necessary for the guilty plea but severely prejudicial to Gray. The trial court entered judgment on the jury's finding that Gray committed murder and aggravated battery. In this appeal, we hold that the trial court committed plain error when it allowed the use of the transcript from the witness's guilty plea as evidence against Gray. We reverse the convictions and remand for a new trial.

## BACKGROUND

On November 26, 2003, London Smith drove with her boyfriend, Gray, to pick up Gray's sister from her high school. Gray's sister, LaTonya Snell, told Gray that a boy from her high school, named Larry, called her names. In Smith's car on the way home, Snell pointed to Larry standing at a bus stop with two other boys. Smith pulled over and Gray got out of the car. Gray asked Larry why he was bothering Snell. Larry hit Gray and they started fighting.

Sommerville drove up in a black van, with his friend Telika Griffin as a passenger. Sommerville got out of the van and intervened in the fight. The fight grew to include Sommerville and Geder, who was also at the scene. Some witnesses said that two other boys from the bus stop also joined in the fight. Gunshots rang out and a bullet hit Washington, who had been watching the fight. Several bullets hit Sommerville as he tried to run away. Sommerville died from the bullet wounds. A police investigation led to the arrest of Gray for the murder of Sommerville and the shooting of Washington.

Geder testified at the trial by a videotaped evidence deposition. The court explained that Geder could not come to court because he had joined the armed services and had started serving in Iraq. In the videotaped deposition, Geder testified that in 2003 he belonged to the Gangster Disciples. On November 26, 2003, Smith and Gray picked up Geder from the corner where he was selling cocaine before driving over to the high school to pick up Snell. When the fight with Larry started, Geder stood near the two boys at the bus stop, watching the fight. Geder recognized Sommerville as a member of the Black Disciples street gang. Sommerville joined the fight against Gray and the two boys at the bus stop started fighting with Geder. Geder saw Gray run over to Smith's car, then Geder heard gunshots. Geder saw Gray raise his arm toward Sommerville, then Geder heard more shots.

After the shooting stopped, Geder saw Gray with the handle of a gun sticking up from his pants. Smith drove Snell, Gray and Geder away from the crime scene.

On cross-examination, Geder admitted that when police first interviewed him, he lied about the incident. He swore that even though he sold drugs for his gang, he never carried a gun. When asked if he wanted people to call him by the nickname he used as a member of the Gangster Disciples, he answered he would rather people called him "Private," for his status in the Army.

Washington contradicted some particulars of Geder's testimony. She testified that Geder sometimes carried a gun. Washington saw both Geder and Gray beating up Larry before Sommerville arrived. But Washington corroborated the crucial parts of Geder's testimony. She saw Smith hand a gun to Gray, and she saw Gray shoot the gun at Sommerville. A bullet hit her after she started to run. Washington admitted that she did not know Gray before the shooting.

Griffin testified that she saw four or five boys fighting when Sommerville pulled up to the scene. Sommerville fought with Gray, and then Griffin saw a gun in Gray's hand. Griffin tried to warn Sommerville as Gray raised his arm, pointing the gun at Sommerville. Griffin dove back into the van and put her head down on the seat. When she thought the shooting had stopped, she lifted her head and saw Gray shoot again at Sommerville. Griffin ducked her head and heard more gunshots. Like Washington, Griffin had not known Gray before the shooting.

Police never recovered the gun. The cartridge cases left at the scene bore no useful fingerprints. All came from a single gun.

Gray presented three witnesses: Snell, Smith, and Gray himself. Gray testified that Geder did not ride to the scene in Smith's car. Instead, Geder ran over to the scene of the fight coming from the home of Geder's grandmother, who lived a few houses away from the corner where the fight took place. After Gray and Larry stopped fighting, Geder began fighting with Larry. Sommerville drove up and started fighting with Gray. A gun fell to the ground near Larry and Geder. Smith picked up the gun and went back to her car. Gray heard shots and saw Geder shooting. Gray admitted that he lied to police about the incident.

Snell corroborated much of Gray's testimony. Geder arrived with the fight already in progress. After Gray stopped fighting, Geder began hitting Larry. Sommerville fought with Gray, and then two other boys from the bus stop joined in the fight. A gun fell to the ground and Smith ran over and picked it up. Snell testified that she saw Geder run over to the car and take the gun away from Smith. He started

shooting in different directions. Gray yelled at Geder to stop shooting. Geder drove off in his own car.

Smith testified that she had seen Geder with a gun he kept for his work for the gang. Like Gray and Snell, Smith testified that Geder arrived after the fight began, and he started fighting with Larry. Later, Sommerville and the two boys from the bus stop joined the fight. Geder's gun fell to the ground near him. Smith picked it up and took it to her car. Geder took the gun from her hand and started shooting. Smith saw Geder shoot Sommerville.

Smith admitted that she pled guilty to a charge of possessing the gun. The court imposed a sentence of two years' probation. Smith's lawyer told her she did not need to agree to any of the facts the prosecution stated on the record for the guilty plea. The transcript of the hearing on Smith's guilty plea shows that Smith's attorney stipulated only that some State witnesses would testify to certain facts and that the testimony would sufficiently support a finding that Smith possessed the gun illegally. Neither Smith nor her attorney agreed to the accuracy of the facts to which those witnesses would testify.

At Gray's trial, in rebuttal to the defense case, the trial court permitted an assistant State's Attorney to read into the record, over Gray's attorney's objection, the factual basis the prosecutor presented when Smith pled guilty to possessing the gun. The assistant State's Attorney read the following parts of the factual basis into the record:

"[O]n November 26, 2003, *** Smith *** gave a handgun to her boy friend, Sylvester Gray.

Sylvester Gray in return used that handgun and fired several shots. One of those struck the victim, Michael Sommerville, and he did die as a result of those injuries."

In closing at Gray's trial, the prosecutor argued:

"[Defense witnesses] are just trying to blame [Geder] because [Geder] is not here. [Geder] is in Iraq fighting for his country. ***

\* \* \*

If the police were scrutinizing him so much that he had to flee the country, he would not have been here for that video. *** He joined the Army because he was tired of living the life that he was living. ***

He was a gang-banger, he was a drug dealer, and do you know what? He straightened his life out."

In response, defense counsel attacked Geder's credibility:

"[W]e also saw a guy who wanted to be called private because he has now found religion, he has now found a light. He has now changed his life from the drug dealing gangster days he used to have ***.

* * *

*** [The prosecutor hopes to] do a bunch of impossible tasks, *** [like] mak[ing] you believe that [Geder] *** was telling the truth ***.

* * *

*** [Geder] lied to the police.

* * *

*** [Geder] tells you he's a drug dealer who doesn't need a gun."

In rebuttal, the prosecutor focused on reasons to believe the three principal State witnesses, especially Geder. The prosecutor said:

"Why would [Geder] come from Fort Benning, Georgia, and give his testimony on a videotaped statement knowing that he was about to be sent to Iraq to fight for his country if he was not coming in to tell the truth?

You heard from the detectives. They cleared him. *** After that, he went and joined the Army.

There is no reason for him to make the trip from Georgia to come here when he's already an Army man and a private to come here and tell you a fabrication. *** ***

*** Detective Meyers *** spoke to [Geder] *** prior to him joining the Army.

* * *

Very conveniently they blame the guy who can't come in to defend himself because he is fighting in Iraq. ***

He told us he wants to be Private [Geder] which is a name he has earned. He has joined the Army. He is trying to make something of his life. He is no longer gang-banging. He is no longer selling drugs. He said, I'm an Army man. I work for the Army. That is a name and a respect that every single person in the armed forces who voluntarily joins earns that right to be called that name.

* * *

The same way that [Geder] earned the right to be called private, Sylvester Gray has earned the guilty verdict."

During deliberations, the jury sent the judge several notes. In one note the jury asked about the locations of witnesses and a car at the time of the shooting. The judge told the jurors to rely on their memories of the evidence. The jurors asked for transcripts of Smith's testimony and Griffin's testimony. The judge gave them the transcript of Griffin's testimony, but the judge said the transcript of Smith's testimony was unavailable. The jurors told the judge they could not reach a consensus. After consulting with Gray, the lawyers, and the

jurors, the judge sent the jurors home for the night, instructing them to continue deliberations the next day. The jury deliberated the following day until 3:30 p.m., when the jury returned its verdict, finding Gray guilty of murder and aggravated battery.[1]

In his posttrial motion, Gray objected to the prosecution's repeated references in closing argument to Geder's service in Iraq. The trial court denied the posttrial motion and sentenced Gray to 20 years for murder and 6 years for aggravated battery, with the sentences to run consecutively. Gray now appeals.

## ANALYSIS

### Standard of Review

Gray raises two issues on appeal. First, he contends that the trial court erred when it permitted an assistant State's Attorney to read into the record the factual basis presented when Smith pled guilty to a charge of unlawful possession of a gun. Second, Gray argues that the comments in closing argument about Geder's service in Iraq deprived Gray of a fair trial. Gray admits that he forfeited appellate review of both issues. Although he objected at trial to the use of Smith's guilty plea, he did not raise the issue in his posttrial motion. Although Gray raised the issue of improper closing argument in his posttrial motion, at trial he failed to object to any of the comments of which he now complains. We agree that Gray has forfeited appellate review of both issues he now raises. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Therefore, in order to consider the issues, we must consider them under the doctrine of plain error. *People v. Herron*, 215 Ill. 2d 167, 178-79 (2005).

Our supreme court explained the plain error doctrine as follows:

"The plain-error doctrine, as it has developed in Illinois, allows a reviewing court to reach a forfeited error affecting substantial rights in two circumstances. First, where the evidence in a case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence, a reviewing court may consider a forfeited error in order to preclude an argument that an innocent person was wrongly convicted. [Citation.] Second, where the error is so serious that the defendant was denied a substantial right, and thus a fair trial, a reviewing court may consider a forfeited error in order to preserve the integrity of the judicial process." *Herron*, 215 Ill. 2d at 178-79.

---

[1]The grand jury also indicted Gray for unlawful use of a weapon, and the jury found Gray guilty of that charge. The court did not enter judgment on that part of the jury's verdict. The unlawful use of a weapon charge has no bearing on any issue in the case.

However, before we determine whether there was plain error, we first determine whether there was an error. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008), citing *People v. Urdiales*, 225 Ill. 2d 354, 415 (2007).

## Smith's Guilty Plea

Gray argues that the trial court erred when it overruled his objection to the assistant State's Attorney's testimony concerning the factual basis presented when Smith pled guilty to the charge of gun possession. A defendant who pleads guilty admits the elements of the offense charged. *People v. Henderson*, 95 Ill. App. 3d 291, 296 (1981), citing *People v. Langford*, 392 Ill. 584 (1946). However, the plea does not constitute an admission of collateral matters. *Henderson*, 95 Ill. App. 3d at 296.

In *Henderson*, the State prosecuted Henderson and several others for a theft from a hardware store. Ricky Hurt, who pled guilty to the theft, testified at Henderson's trial that Henderson did not take part in the theft. On cross-examination, Hurt admitted that an assistant State's Attorney had summarized the evidence the State would have presented against Hurt had Hurt pled not guilty. That summary included the assertion that a witness would say Henderson also accompanied Hurt. At Henderson's trial, Hurt testified that he disagreed with that part of the evidence the State would have presented against Hurt.

The appellate court held that Hurt did not judicially admit the accuracy of what other witnesses would have said:

> "While a confession may be involved as Hurt voluntarily acknowledged his guilt, such does not embrace declarations of independent facts. The rule that a guilty plea constitutes an admission of every fact alleged in an indictment is limited to facts which constitute an ingredient of the offense charged. [Citation.] Hurt's guilty plea therefore cannot be characterized as embracing the collateral matter of his passenger's identity. *** Therefore the lack of a statement by Hurt negates characterizing the synopsis as an admission. The lack of a statement similarly precludes characterizing the synopsis as a prior inconsistent statement." *Henderson*, 95 Ill. App. 3d at 296.

Here, by pleading guilty to the offense of unlawful use of a weapon, Smith admitted that she possessed a gun illegally. However, when she entered her plea, Smith never said that she handed the gun to Gray, and nothing in her conduct showed that she agreed to the accuracy of the testimony that other witnesses would have given had she pled not guilty. Smith's guilty plea did not include an admission that she gave a gun to Gray or that Gray fired the gun, because those collateral facts had no bearing on the elements that the State had to

prove to establish Smith's guilt of the unlawful use of a weapon offense. The doctrine of judicial admissions does not justify the admission in evidence, at Gray's trial, of the assistant State's Attorney's account of the factual basis for Smith's guilty plea. See *Henderson*, 95 Ill. App. 3d at 296.

Neither could the court justify admitting the evidence from the guilty plea as a prior inconsistent statement by Smith. See *Henderson*, 95 Ill. App. 3d at 296. Smith said nothing when she pled guilty or when she testified at Gray's trial that showed her assent to the collateral matters the prosecutor stated when the prosecutor presented a factual basis for Smith's guilty plea. Smith's testimony at Gray's trial accords with her plea that she possessed a gun. Therefore, we find that the trial court erred when it permitted the prosecutor to testify about the factual basis the State presented during Smith's guilty plea.

## Plain Error

To determine whether the error here amounts to plain error, we must decide whether the evidence "is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence." *Herron*, 215 Ill. 2d at 178.

■ Here, the State presented two witnesses, Washington and Griffin, who swore they saw Gray shoot Sommerville and Washington. Geder swore he saw Gray extend his arm to point at Sommerville, then Geder heard shots, and then Geder saw Gray holding a gun in his waistband. Three defense witnesses swore they saw Geder shoot Sommerville. The evidence at the scene showed all shots came from a single gun, but none of the physical evidence helped determine whether Geder or Gray fired the gun. We see nothing inherently incredible or severely self-contradictory in the testimony of any of the witnesses. Therefore, the case came down to a matter of the credibility of the conflicting witnesses. We find the evidence closely balanced. See *People v. Naylor*, 229 Ill. 2d 584, 607-08 (2008). The lengthy jury deliberations, with the note informing the court that the jury could not reach a consensus, shows that the jury, too, found the evidence closely balanced. See *People v. Davis*, 393 Ill. App. 3d 114, 133 (2009); *People v. Ehlert*, 274 Ill. App. 3d 1026, 1035 (1995); *People v. Palmer*, 125 Ill. App. 3d 703, 712 (1984).

The assistant State's Attorney's testimony about the factual basis presented when Smith pled guilty implied that Smith inculpated Gray. See *Henderson*, 95 Ill. App. 3d at 296-97. In this case, with closely balanced evidence, the improperly admitted evidence, which might have led the jury to believe that one of Gray's witnesses once admitted that she saw Gray shooting Sommerville, might have swayed the jury. We

find that the trial court committed plain error when it permitted the prosecution to introduce into evidence the assistant State's Attorney's testimony about the factual basis presented when Smith pled guilty to possessing a gun illegally. Therefore, we reverse the conviction and remand for a new trial. See *Henderson*, 95 Ill. App. 3d at 296-97; *People v. Traylor*, 201 Ill. App. 3d 86, 90-91 (1990).

## Geder's Service

■ Next, Gray contends that the prosecutor's repeated references to Geder's service in Iraq deprived Gray of a fair trial. We address this issue only because it may arise again on remand. Gray complains mostly about remarks the prosecutor made in closing and rebuttal argument. "Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007). A prosecutor may properly comment on the credibility of witnesses, as long as he bases his comments on the evidence and permissible inferences from the evidence. *People v. Hickey*, 178 Ill. 2d 256, 291 (1997). However, "statements made in closing argument which serve no purpose except to inflame the jury constitute error." *People v. Threadgill*, 166 Ill. App. 3d 643, 651 (1988).

Here, defense counsel argued that the jurors should not believe Geder because he sold drugs for the Gangster Disciples and he lied to police. When a party impeaches a witness with evidence of past misconduct, the other party may rehabilitate the witness with evidence of subsequent conduct showing present good character. *People v. Farrell*, 377 Ill. App. 3d 249, 252 (2007); *People v. Costello*, 223 Cal. App. 2d 748, 753, Cal. Rptr. 155, 158 (1963). If a witness has offered crucial testimony, the trial court should allow both parties wide latitude to impeach and rehabilitate the witness to help the jury evaluate the credibility of the witness. *Bianchi v. Mikhail*, 266 Ill. App. 3d 767, 777 (1994). "In assessing credibility, the trier of fact may consider the witness' occupation as a factor bearing on credibility." *People v. Hawkins*, 243 Ill. App. 3d 210, 221 (1993); see *People v. Bond*, 281 Ill. 490, 499 (1917). The trial court properly permitted the prosecutor to comment that Geder had reformed from his past as a gang member and drug dealer to take an honest job as a soldier.

However, the prosecutor should not have used the risk Geder faced as a soldier as a reason for the jurors to find him credible. In a case involving police officers as witnesses, the appellate court said, "[i]t is *** improper for the State to attempt to bolster the credibility of its police officer witnesses by commenting that these officers risk their lives every day for people like the jurors." *People v. Williams*, 289 Ill.

App. 3d 24, 36 (1997). In *Threadgill*, the prosecutor emphasized in closing argument that jurors should find the testimony of police officers credible because the officers placed their lives at risk to defend the public. The *Threadgill* court said, "This line of argument was calculated to inflame the jurors' fears that if they found the defendant not guilty, they were turning their backs on the \*\*\* police \*\*\*, who were risking their lives for the jurors. This argument was uncalled for and exceeded the bounds of propriety." *Threadgill*, 166 Ill. App. 3d at 651. Soldiers, like police officers, risk their lives protecting the public. Arguing that jurors should find soldiers credible because they risk their lives to protect the public would similarly exceed the bounds of propriety. We find that some of the prosecutor's remarks, if reused at the retrial, could become inflammatory. In particular, comments that Geder joined the Army "to fight for his country" could bias the jury, especially if the prosecutor uses the sympathy Geder might evoke because all of the jurors recognize the risk Geder faces fighting in Iraq. But we see nothing improper in the comments that Geder no longer works for the gang selling drugs and that he has joined the Army. The prosecutor may repeat the remarks at the trial on remand if Gray attacks Geder's credibility based on his former work as a gang member and a drug dealer.

## CONCLUSION

The trial court committed plain error when it overruled Gray's objection to the testimony concerning the factual basis presented when Smith pled guilty to possessing a gun. Because the error may have tipped the scales for the closely balanced evidence against Gray, we reverse the conviction and remand for a new trial. On remand, if Gray again asks the trier of fact to find Geder's testimony incredible because he sold drugs as a member of the Gangster Disciples, the prosecutor may comment on evidence that Geder reformed and joined the Army. However, the prosecutor should not ask the jurors to believe Gray because he risks his life serving them in Iraq.

Reversed and remanded.

QUINN, P.J., and STEELE, J., concur.